MARY BATES KILBOURN v. ORLEY CLYDE KILBOURN and GROVER C. ALLEN, Appellants.—No. 39070.— 190 S. W. (2d) 206.

Division One, June 4, 1945.

*Stephen J. Millett* for appellants.

18

*O. J. Adams* and *Lawson & Hale* for respondent.

VAN OSDOL, C.—Action to try, ascertain and determine title to real property, and in ejectment. It was agreed the trial court's finding on the issue of possession should follow the finding on the issue of title; the trial court found plaintiff to be the owner and entitled to the possession, and defendants have appealed.

The property consists of two lots in the village of Cowgill, Caldwell County. Orley Clyde Kilbourn, a defendant-appellant, had been vested with the title to the property. In 1939 Mary Bates Kilbourn, plaintiff-respondent, then the wife of defendant Kilbourn, had recovered judgment for separate maintenance in the sum of $40 per month in the Circuit Court of Caldwell County (Missouri). December 20, 1940, defendant Kilbourn procured a decree of divorce from plaintiff-respondent in the Chancery Court, Boone County, Arkansas. December 21, 1940, defendant Kilbourn conveyed the property by warranty deed to defendant-appellant, Grover C. Allen, the deed reciting a consideration of "One Dollar and other considerations"; and the conveyance was recorded February 24, 1941. February 20, 1941, the sheriff of Caldwell County had levied upon the property by virtue of a writ of execution issued February 15, 1941, under the judgment for separate maintenance mentioned supra; March 17, 1941, the property was sold by the sheriff, and plaintiff became the purchaser for the sum of $125. Actually only $40 had accrued and was unpaid on the separate maintenance judgment on December 20, 1940, the date of the entry of the Arkansas divorce decree. The sums of $40 for separate maintenance and $15.55 in costs were tendered to plaintiff by defendant Allen at the trial. The property was of the reasonable value of $1500 in the year 1941.

Defendant Kilbourn denied generally the allegations of the petition, disclaimed title, and alleged himself to be the tenant of defendant Allen. Defendant Allen by answer raised the general issue; and pleaded the decree of divorce, the warranty deed executed to him by

defendant Kilbourn after the rendition of the divorce decree, and the inadequacy of the purchase price ($125) paid by plaintiff at the execution sale. Plaintiff alleged in her reply that the warranty deed from Kilbourn to Allen was without consideration and in fraud of plaintiff, a judgment creditor; and that the divorce decree had been fraudulently procured.

At the outset it is expedient to narrow the review of the contentions of the parties to those questions which are decisive. Evidence was introduced tending to show that the domicile of defendant Kilbourn in Arkansas at the time of the procurance of the divorce decree was a sham. It is contended by defendants that we must render full faith and credit to the divorce decree because the record of the divorce proceeding is regular on its face and recites the jurisdictional facts required by the laws of Arkansas. It was stated by Bliss, J., in the case of Marx v. Fore, 51 Mo. 69, at page 75, ''The rule is that they (judgments of other States) are to be just as conclusive as domestic judgments, *with this exception,* that 'they are open to inquiry as to the jurisdiction and notice to defendant' . . ., and this inquiry can be made notwithstanding the recitals.'' Also examine the case of Leichty v. Kansas City Bridge Co., 354 Mo. 629, 190 S. W. (2d) 201, decided concurrently herewith. However, it is not necessary in the case at bar to review the evidence touching upon the validity of the divorce decree. It should be conceded that defendant Kilbourn had a right to effect a preference to a *bona fide* creditor other than the plaintiff. Owens v. Owens, 347 Mo. 80, 146 S. W. (2d) 569. The legislature has given the courts greater power (and more specific means) in enforcing an award of separate maintenance than the mere right to adjudge a lien to exist on the real property of the husband. Section 3377, R. S. 1939, Mo. R. S. A., sec. 3377. Consequently, it is contended by defendants that the judgment for separate maintenance, being payable in periodical installments, did not become a lien upon the property prior to the issuance of the execution. The case of Hagemann v. Pinska, 225 Mo. App. 521, 37 S. W. 2d 463, is cited. We will assume (but do not decide) that defendants are right in this contention. Assuming that the conveyance by defendant Kilbourn unto defendant Allen was not in fraud of the creditor-plaintiff, the deed having been executed prior to the time the judgment became a lien and the instrument having been recorded prior to the sale under the writ of execution, the purchaser (plaintiff) at the sheriff's sale did not acquire any title to the property in derogation to that acquired by defendant Allen under the warranty deed. Givens v. Burton, Mo. Sup., 183 S. W. 617; Black v. Long, 60 Mo. 181, and cases cited. Therefore, one decisive question is—was the conveyance in fraud to the rights of plaintiff, a judgment creditor of defendant Kilbourn?

Defendant Kilbourn is a physician who has practiced at Cowgill for several years. Defendant Allen is the manager of a pharmaceutical company of North Kansas City and in former years had traveled as a salesman over a territory including Cowgill, and had sold medicines to defendant Kilbourn. The defendants had become well acquainted and, it seems, were on such terms that one frequently lent money to the other. It was the testimony of defendants that defendant Kilbourn had become indebted unto defendant Allen in the sum of "something more than $2000.00." This indebtedness, according to the defendants, accrued through advances made "six or seven times, perhaps," the largest amount lent at any one time being about $600; some of these moneys had been used by Kilbourn to satisfy executions formerly issued under the plaintiff's judgment for separate maintenance; it had been agreed that the advances were to be repaid in cash or, if defendant Kilbourn were unable to repay, the property was to be sold and conveyed to Allen in part payment of the aggregate debt. The various sums were advanced by Allen unto Kilbourn in cash from defendant Allen's pocket. No formal notes were taken, but defendant Kilbourn executed to Allen "what I (Allen) ordinarily refer to as an I. O. U." It was the testimony of Allen that he had acquired the property for a consideration of $1500, and, upon the execution of the conveyance, he had surrendered to Kilbourn the I. O. U's, and had received from Kilbourn the sum of $500 in cash which Kilbourn testified had been raised by making collections from patients. Defendant Allen did not have the abstract of title extended and examined, and has had no insurance on the property. It was the purport of the testimony of the defendants that defendant Kilbourn has remained in possession of the property as the tenant of defendant Allen with rental of $15 per month, paid semi-annually. In corroboration of the latter testimony, receipts were introduced into evidence, by defendants, dated July 1, 1941, January 1, 1942, July 1, 1942, January 1, 1943, all written upon the same receipt form and apparently by the same pen; they were identically folded, and all but free of soil and signs of wear although it was the testimony of Kilbourn that he had carried the receipts in his purse since their respective dates and until the time of trial, June 28, 1943. Defendant Allen had not seen or interviewed defendants' counsel until a time more than a year after this action was commenced. Upon being told of the institution of this action, Allen relied upon Kilbourn to employ an attorney to defend. The explanation was made by defendant Kilbourn that Allen was relying upon the covenants of Kilbourn's warranty deed; however, Kilbourn stated the property involved herein comprised the "only property that I had to pay my debts . . ."

The trial court was not (nor are we) obliged to believe the testimony of defendants relating to the indebtedness and the conveyance of the property in part payment of the debt; and reasonable inferences, in

favor of the plaintiff and against the defendants, may be drawn from the facts and circumstances in reviewing the evidence upon the issues of fact. Circumstances, and defendant Allen's acts, and his failure to act, in relation to the property after the conveyance, tend to negative the view that Allen considered himself the owner of the property. He took no precaution to protect the building by insurance, and, as we have seen, was passive in the preparation of the defense of the instant action. At the time of the acceptance of the deed, he did not inquire into Kilbourn's title as one would ordinarily do upon acquiring a property for a valuable consideration paid. And mark partcularly a fact of import unfavorable to defendants' case—the retention of the possession of the property by defendant Kilbourn. The testimony that the relation of landlord and tenant existed (and the rent receipts introduced in corroboration of such testimony) was given no credence by the trial court, and, indeed, this evidence appears to us to have been conceived by defendants during trial in the effort to explain away the import of the fact of defendant Kilbourn's continued possession.

Giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, our consideration of the whole of the evidence prompts a conclusion in harmony with the trial court's finding.

It is urged by defendant Allen that the purchase price paid by plaintiff at the execution sale was so inadequate as to shock the conscience. We should not permit defendant Allen, a voluntary grantee, who, in view of the finding supra has no interest in the property, to raise this question. Skillman v. Clardy, 256 Mo. 297, 165 S. W. 1050.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.