In Re OGLE E. VEACH, an Attorney, No. 44453—287 S. W. (2d) 753.

Court en Banc, March 12, 1956.

*Lyle M. Allen* and *George C. Willson, III,* for informants.

*Stephen F. Pinter* for respondent.

[754] EAGER, J.—This is a disciplinary proceeding against Ogle E. Veach, a member of the Bar of Missouri; he will hereinafter be referred to as the respondent. The information was filed direct in this court on June 3, 1954, under Rule 5.03, by the members of the Bar Committee for the Eighth Judicial Circuit. That committee had conducted an informal investigation, and thereafter had held formal hearings after due notice to respondent, who appeared there in person and by attorney. After such hearings, the committee found that there was probable cause to believe that respondent was guilty of professional misconduct in both particulars set out in the notice; these conform, generally, to Counts I and II of the information filed here.

Count I of the information charges professional misconduct in that respondent, with the aid of one Ross, solicited the personal injury claim of William C. Hugueley in St. Louis, Missouri, on February 23, 1952, and thereafter; Count II alleges the suspension of respondent from the practice of law by a judgment of the Supreme Court of Illinois, by reason of ten separate acts of improper solicitation or attempted solicitation of personal injury claims; that suspension was for a period of five years from September 24, 1953; attached to the information are authenticated copies of the judgment and opinion of that court. The prayer is that respondent be permanently disbarred. Summons in usual form was issued and served, and the court also entered its order requiring respondent to show cause why he should not be disciplined by reason of the judgment of the Supreme Court of Illinois.

Respondent filed his answer denying the charges of Count I and specifically denying that Ross solicited on his behalf or with his authority; the answer admitted the suspension in Illinois, as alleged in Count II, but denied the sufficiency of the evidence there, and denied the "legality" of that judgment because respondent was not then engaged in practice in Illinois and had no office or home there. Respondent likewise filed a return to the order to show cause alleging: (1) that no rule had been adopted by this court permitting any summary order based on the Illinois proceedings; (2) that respondent was and is a resident of Missouri, had no office in Illinois for some years prior to the proceedings there, and that he was originally licensed here; (3) that the opinion of the Supreme Court of Illinois "discloses no basis for the severe condemnation" adjudged; (4) that the criticism there levied against him for not producing certain corroborating witnesses was unjustified. Informants have filed their motion for judgment on the pleadings as to Count II of the informa-

tion, on the ground that respondent has failed to allege any facts sufficient to show why the Illinois judgment should not subject him to discipline here. That motion is now pending.

This court then appointed the Honorable John W. Calhoun, former Judge of the Circuit Court of the City of St. Louis, as Special Commissioner to take testimony, make findings, and report to this court his findings and conclusions on Count I [755] of the information. The Special Commissioner duly qualified and proceeded to hold hearings at various times. Respondent appeared there in person and by counsel and participated in the hearings. It developed at these hearings that William C. Hugueley and Mildred P. Jamerson, both of whom had testified before the committee at the informal and formal hearings (see Rule 5.03), had moved to Chicago, Illinois, and were then married; these witnesses had not answered a request that they appear before the Commissioner; consequently, the informants offered, and the Commissioner received, over objection, the record of their testimony at both such prior hearings. Although it may be that all such evidence was properly received under Rule 5.03, since these witnesses were fully cross-examined at the formal hearing and after due notice to respondent, we need not cross that bridge here; we shall consider only the testimony of these witnesses at the formal hearing before the committee, which consisted almost entirely of cross-examination by respondent's counsel. There can certainly be no lack of due process in so doing. Thus, we proceed first to a review of the evidence on Count I of the information. Since it is our duty to make our own decision, after giving due regard to the findings and recommendations of the Commissioner, we review the evidence independently.

It appears that respondent lived in Illinois until he enrolled in the Benton College of Law in St. Louis, from which he graduated in 1928; at approximately that time he was admitted to the Bar of Missouri. He continued to practice here until about 1939 or 1940, when he was admitted to practice in Illinois. From that time until about 1951 he maintained an office in East St. Louis, Illinois, after which time he apparently moved back to Missouri. At the time of the occurrences charged in Count I he had an office address in St. Louis, Missouri.

William C. Hugueley, an employee of Fisher Body Division of General Motors in St. Louis, sustained injuries in an automobile accident on February 22, 1952, and was taken to the St. Louis City Hospital and there placed in a ward with various other patients. Two friends, a Miss (or Mrs.) Mildred P. Jamerson and Charles F. Oberhaus visited him there from time to time, and parts of the evidence stated here consist of their testimony. Combining the evidence of these three persons, it appears therefrom generally that about 1:00 P.M. on Saturday, the day after the accident, a man appeared at Hugueley's bedside, entirely unrequested and unknown to him, and

introduced himself as Mr. *Ross*. This man said that he had been informed that Hugueley was hurt, that he was working for an attorney, that "we are well equipped to do the job * * we take pictures of the place," that he figured Hugueley needed a good lawyer, and that "they should get started on it right immediately before it gets too old * *." Hugueley told him that he would not be interested until he talked with his friends, but that he could come back if he wanted to; the man returned the next afternoon (Sunday) and talked both with Hugueley and Miss Jamerson, to the latter of whom he also introduced himself as ".Ross." On either Saturday or Sunday he mentioned Mr. Veach, the respondent, whom he said was then in Alton, Illinois, working on a case; he further said that Mr. Veach "usually worked with him." On Sunday Ross left after a few minutes when Hugueley's wife came in; in the meantime, however, he had said that he wanted them to meet Mr. Veach, talked about "cases" he had been interested in, and asked if Miss Jamerson would be there on Monday. On two occasions Ross was asked for his card, but he said that he "had changed his shirt" and had none. Neither Hugueley nor Miss Jamerson told Ross not to bring Mr. Veach there, nor did they invite him to do so. Miss Jamerson testified that she told Ross that if Hugueley wanted him he would get in touch with him, and that he talked about cases and left. On Monday evening Ross came back with respondent Veach, who did most of the talking after he was introduced by Ross. Charles Oberhaus and Miss Jamerson were also there and much of the conversation was between them and [756] Veach because Hugueley was "more or less" letting them handle the matter and he was apparently not in a physical condition to conduct negotiations; Mr. Veach then mentioned other specific cases in which he had been associated and the matter of large settlements obtained; Miss Jamerson and Oberhaus asked Veach for his card and she testified that he "eventually" gave them one and wrote his telephone number on it; the card was produced at the hearing. Miss Jamerson also asked him what his "terms" were and he replied that "we get a third." Oberhaus testified that Veach did not in so many words say "Give me the case," but when asked by respondent's own counsel: "Did he solicit the case or not, in your presence?" he answered "I believe he did; yes." Miss Jamerson further testified that on the day Hugueley went home from the hospital and while some insurance people were there, the doorbell rang, the landlord answered, and when she looked out a little later she saw respondent get into a car across the street and drive away; also, that Ross was with him. She further testified that someone telephoned the house the next morning and said "This is Ross and Veach," and that she told the person speaking that Hugueley already had a lawyer (he having apparently employed a Mr. Mashak on the previous evening.)

The respondent testified before the Commissioner in substance as follows (we shall note in parentheses certain comparisons with his testimony before the Bar Committee): that since 1952 he had been associated with the law firm of Cox, Cox & Cox in St. Louis; that he had known a Roy Garrett who had previously referred his brother's case to respondent, and had also referred to him the case of a "lady * * that got hurt one time"; that Garrett was not a lawyer, but ran a trailer camp and had been in the insurance business; that on February 23, 1952, he found a telephone message on his desk instructing him to meet Roy Garrett at the City Hospital to see a friend of his there, but "they had it Ross instead of Roy"; that he went to the City Hospital that evening, met Garrett in the reception room and was taken into the ward and introduced to Hugueley. (In his testimony before the Committee respondent said that Garrett had, at the time, been visiting his injured brother; that Garrett was "there with Mr. Hugueley" when he, Veach, got to the hospital; also, that Hugueley's name was on the telephone message slip, but that the slip had been misplaced in the file of his attorney.) When Veach arrived, Miss Jamerson and Oberhaus were present at Hugueley's bedside. A "general" conversation ensued about Hugueley's health, etc., and respondent asked Hugueley if he had sent for him to which the latter answered "Yes"; that at about this juncture Hugueley's wife came in and Hugueley told him to go and talk with Miss Jamerson and Oberhaus, which he did a short distance from the bed; he told these persons "who I was with," gave them his card on request, did not remember whether he told them his "charges," and said that if he could be of any service they should let him know. He further testified that he did not ask for employment, nor did he "solicit" the case. He denied that he had ever gone to Hugueley's residence or telephoned there. Respondent testified that he knew no Ross, and that "Ross" and Roy Garrett were evidently the same person; he had known Garrett about twenty-five years. Respondent produced as an exhibit a telephone message which he identified as the memorandum given to him on the day of the telephone call. It read: "For Mr. Veach Date 2/25/52 Time 10:30 A.M. While you were away Mr. Roy Telephoned x Wants to see you x Message at 7:00 p.m. at City Hospital. Friend hurt in accident Signed Virg. h." He testified that he had located this message just two or three months previously in his former attorney's file, specifically stating: "and that was in it" (i.e. this message was in the file). He further testified that he had not discussed the matter recently with the telephone girl at that office. He said further that he kept most of his memos of old telephone messages for "referral,"— even for four or five years.

[757] Virginia Hazer, the telephone operator, testified (on March 25, 1955): that on March 10, 1955, respondent had brought to her an original telephone message similar in all particulars to the exhibit

described above (and in her handwriting) except that the name of the caller was "Ross" instead of "Roy"; that respondent then asked her to change the name "Ross" to "Roy," saying that it was a mistake, and that she rewrote the message in identical form except for that change of name; the rewritten message was the one produced by respondent, and she had given the original back to respondent. She further testified that Roy Garrett had called at various times, that she knew no "Ross," but that she thought she had the name correct when she originally wrote the message.

Roy Garrett testified for respondent and his testimony is principally noteworthy for its vagueness and evasiveness. It is difficult to select anything concrete and positive out of it. He had known Veach about twenty-five years, "off and on." He remembered little of any consequence. He thought he had been visiting a barber from Salem, Missouri, (not his brother) at the City Hospital when he met Hugueley there, although he was not at all sure of Hugueley's name. At any rate, that man (supposedly Hugueley) suggested that he needed a lawyer, and Garrett said "I could recommend a fellow to you," whereupon he was asked to "send him down." He said that he called "the office" and told the girl "it was Roy * and * to have Mr. Veach meet me at the lobby *." He denied ever saying that his name was Ross. Veach met him and he introduced Veach to the man in the ward; Garrett, so he said, talked to *his* friend and left, and "I didn't know what happened or nothing about it." He was very indefinite as to what previous trips he had made to the hospital at or about this time, and also about dates in general; finally, he merely presumed that he had called Veach, because "he wouldn't be there if I hadn't." He had called respondent on several occasions; he was not introduced at the time in question to anyone else and did not believe that anyone else was present; he did not remember Oberhaus or Miss Jamerson, but they "might" have been there; he was not asked for a card; he stated that in making telephone calls he usually said, "it is Roy,"— at least after the first call. Garrett further testified that he had previously done "some work" for two lawyers (one of whom was a respondent in the case of In re Gallant, et al., 231 Mo. App. 150, 95 S.W. 2d 1249), and as to one of these he said: "I did all kinds of work for him in the practice of law," but that he did not go to see prospective clients.

In support of the charges in Count II of the information there has been filed in this court the judgment and opinion of the Supreme Court of Illinois in its cause No. 32,789, Ogle E. Veach, dated September 24, 1953. The opinion is reported at 1 Ill. 2d 264. Under the view we take of the case it will be unnecessary to recite the facts stated in that opinion. The case came there on review, first from the Committee on Grievances of the Illinois Bar, and lastly from the Board of Governors, acting as Commissioners. It will suffice to say that the

present respondent was therein charged in sixteen counts with the solicitation of personal injury business (along with one other charge on which he was discharged) and that he was found guilty of ten separate acts of solicitation or attempted solicitation. The court declined to disbar respondent, as recommended by the Committee and the Commissioners, but suspended him for a period of five years. In the course of the opinion the court reviewed in some detail each of the charges which had been sustained and said, in part: "The record in this case evidences conclusively a career of active and repeated solicitation of personal injury business by respondent. * * * It indicates a planned and intentional mode of operation. * * This was a bold plan of promotion for his own legal business—strictly prohibited by the Canons of Professional Ethics.".

Since Count II is pending here on the motion of Informants for Judgment [758] on the Pleadings, we shall consider that count first. We have determined that the motion should be sustained since, in our view, neither the answer of respondent to that count, nor his return to the order to show cause, presents any defense. We shall discuss briefly the contentions and arguments of the respondent. The mere lack of a specific rule of this court providing for summary action in such cases is wholly immaterial. This court has the inherent power to discipline those persons enrolled as members of the Bar of Missouri. In Re Richards, Banc, 333 Mo. 907, 63 S.W. 2d. 672; Rules 5.01 to 5.17, inclusive. The very presentation of this argument concedes the inherent power of the court, for any such rule would only be evidentiary of that inherent power already existing. The contention that the Supreme Court of Illinois acted illegally because respondent was not, at the time, engaged in practice in Illinois and had no office or home there, is wholly without merit. He was enrolled as a member of the Illinois Bar and had practiced there actively for some years; that court at all times retained inherent jurisdiction over him as an officer of the court. It does not appear that any question of jurisdiction was there raised, but that, on the contrary, respondent defended throughout on the merits.

The remainder of the contentions consist of arguments going to the merits of the Illinois judgment and opinion, and a criticism of the severe punishment imposed; and, more or less by indirection, respondent argues that since the charges there did not involve his character or constitute moral turpitude, the judgment is not such a one as should be recognized in another jurisdiction. In that connection, his counsel states in the brief, rather brazenly, we think: "Solicitation, even if proven, certainly does not have any effect on the private character of an attorney, not even his professional character is involved." The particular emphasis on "character" is apparently gleaned from the case of Selling v. Radford, 243 U. S. 46, 61 L. Ed. 585, cited and relied upon by Informants. In that case the respondent had been disbarred

·in Michigan; and proceedings were instituted to strike his name from the roll of the Bar of the Supreme Court of the United States. The ·repeated references there to a "fair private and professional character" (which, specifically, seems to impart the "character" idea to respondent) appear merely to refer to the rule of that court setting ·out the qualifications for admittance. The court there held that the loss of the requisite qualification for membership in the Bar, by wrongful conduct wherever committed, operates everywhere and furnishes reason in every jurisdiction for a revocation of license. The court further held that the effect of the judgment of the Michigan court should be recognized unless: (1) there was a lack of due process; (2) there was such an infirmity of proof as to create a clear conviction that the conclusion should not be accepted; or (3) there appeared some other "grave reason" which would indicate that the result would conflict with the court's duty under the principles of "right and justice." In our opinion, none of those exceptions or qualifications are applicable here. · . . · · ·

It does not appear that the Missouri Courts have previously had this particular question for decision. The Springfield Court of Appeals in the case of In Re Sizer, Mo. App., 134 S.W. 2d 1085, indicated the view that a foreign suspension of a Missouri attorney might be grounds for suspension in Missouri. We now hold that on the present record the judgment and opinion of the Illinois Supreme Court constitutes and is a sufficient ground for disciplinary action by this court. In so ruling we are supported, directly or in principle, by the following authorities: People ex rel. Colorado Bar Ass'n. v. Lindsey, 86 Colo. 458, 283 P. 539; State Board of Law Examiners v. Brown, 53 Wyo. 42, 77 P. 2d 626; In Re Leverson, 195 Minn. 42, 261 N.W. 480; In Re Disbarment of Isserman, 345 U. S. 286, 97 L. Ed. 1013; Copren v. State Bar, 64 Nev. 364, 183 P. 2d 833; In Re Ulmer, 268 Mass. 373, 167 N.E. 749; In [759] Re Van Bever, 55 Ariz. 368, 101 P. 2d 790, and Selling v. Radford, 243 U.S. 46, 61 L. Ed. 585, supra. In the Lindsey case, supra, the court said in part, at 283 P., l. c. 546: "* * * The respondent's oath of office as an attorney and counselor at law is not only binding here in Colorado but everywhere. He cannot put it aside or renounce it at pleasure. It abides with him at all times and places, and he will be held responsible to this court for his misconduct as an attorney so long as his name continues on the roll; nor can he put himself in a position which will place him beyond the inherent power of this court to purify the bar of its unworthy members, and to keep its roster clean." Some of the cases just cited appear to proceed on a theory of comity, while others recognize the foreign judgment as one entitled to full faith and credit. Actually, the matter would seem to involve both doctrines. The judgment appears to us to be one entitled to full faith and credit in so far as it finally adjudicates that in Illinois the respondent was

guilty of the misconduct with which he was charged. Such being true, we cannot, in any sense, permit that issue to be re-litigated here. Such a judgment is only subject to attack for: (1) lack of jurisdiction over the subject matter; (2) failure to give due notice to the defendant; and (3) fraud in the "concoction" of the judgment. Howey v. Howey, Mo., 240 S.W. 450; Leichty v. Kansas City Bridge Co., 354 Mo. 629, 190 S.W. 2d 201; Kilbourn v. Kilbourn, 354 Mo. 17, 190 S.W. 2d 206. None of these grounds appears here; and respondent appeared and contested the Illinois proceedings. We cannot and will not reinvestigate the merits of those charges. See: 50 C.J.S., Judgments, § 891, p. 492 et seq.; Williams v. North Carolina, 325 U.S. 226, 89 L. Ed. 1577; Cook's Estate v. Brown, 346 Mo. 281, 140 S.W. 2d 42; Shearer v. Parker, 364 Mo. 723, 267 S.W. 2d 18. The element of comity appears when we consider what effect we shall give such a judgment here. There may be cases in the future where, recognizing the finality of the foreign adjudication, we may not see fit to give it effect in Missouri. We reserve that right, but feel that this is not such a case.

■ We cannot escape the general conviction that a lawyer who has, after fair and adequate hearing, been suspended for professional misconduct in a sister state, should not be permitted to practice in Missouri while he remains so suspended, if the ground of his suspension is also a ground for disciplinary action here. If one has been guilty of conduct inconsistent with the standard expected of lawyers as officers of the court, it should make no difference whether the acts were committed on this side or the other side of a theoretical fence. There are no territorial boundaries in cases of such misconduct. The wrong and the guilt is within the person himself, and he carries it with him; he cannot be mentally and professionally pure in Missouri and impure in Illinois. To hold otherwise would make a mockery of disciplinary procedings where an attorney has practiced back and forth across state lines, as here.

It is true that in some of the cited cases questions of moral integrity were involved. The distinction thus attempted to be made, however, goes merely to the degree of the offense and to the extent of the punishment. The acts of which respondent was found guilty in Illinois are equally a violation of our own Canon of Ethics, and they are expressly prohibited here. See Rules 4.27, 4.28 and 4.47. In such a situation there is no reason why we should not recognize and give effect to the judgment, not by allowing any automatic or extra-territorial effect to the Illinois judgment, but by our own independent action in purging our own bar, once the matter has been brought to our attention. Respondent has, in our opinion, shown no good and sufficient reason to the contrary, even under the qualifications mentioned in the case of Selling v. Radford, 243 U.S. 46, 61 L. Ed. 585, on which he seems to rely. The remainder of his complaints consist of

arguments concerning the evidence, supposedly unfair comments in the opinion about the lack of corroboration of his own testimony, and the fact that, allegedly, the Illinois decision is inconsistent with prior decisions in the extent of punishment adjudged. With these matters [760] we need not concern ourselves; as to them, the judgment is entitled to full faith and credit, and it speaks here as the last word of the Illinois court.

The charges contained in Count II of the information herein are sustained, and by reason thereof, respondent will be suspended from the practice of law in Missouri during the remainder of the period fixed by the judgment of the Supreme Court of Illinois, namely, to the 24th day of September, 1958.

■ The Special Commissioner has reviewed the evidence applicable to Count I in detail, and generally as it has been stated here. In part, the comments of the Commissioner on the evidence are as follows: "The testimony of respondent, Ogle E. Veach, is full of discrepancies, and when considered with the testimony of other disinterested witnesses varies greatly from their version of the particular occurrence that was the subject of inquiry and is in many respects obviously untrue. * * His version of his visit to the City Hospital and what occurred there is so different and so inconsistent with the testimony of disinterested persons testifying about the same occurrence that it cannot and should not be believed. It is most unlikely that he discussed with Mr. Hugueley 'only the condition of his health and how he felt, and as Mr. Hugueley made no suggestion or any offer to employ him, said nothing more to him.'

"Roy Garrett's testimony is chiefly distinguished for its evasiveness, its lack of positiveness about factual situations and his failure to remember incidents that should have been known to him and about which he was questioned. * * * There is little in his testimony that is reliable except that on occasions he had served the interests of at least three lawyers, 'Buzz' Hannigan, Harris R. Herbert and respondent, Ogle E. Veach." The finding of the Commissioner on Count 1 was that Ogle E. Veach was guilty as charged therein; his conclusions of law on that count were as follows: "I find as a matter of law, on the facts as found herein, that it was unprofessional, unethical, unlawful and in violation of Rules 4.27, 4.28 and 4.47 of the Rules of this Court for respondent to have, himself, solicited and through an intermediary to have solicited and attempted to persuade a person to assert a claim for personal injuries and to have sought to induce such person to employ respondent, Ogle E. Veach, to represent him and that such conduct fully justifies disciplinary action against respondent by this court. In re: Gallant et al, 95 S.W. (2d) 1249." His recommendation of discipline on Count I was a suspension from the practice of law for a period of one year, such suspension to commence at the end of any term of suspension fixed under Count II.

We agree with the Commissioner. The purpose of disciplinary proceedings, of course, is not to punish the offender, but to protect the public and those charged with the administration of justice. Leimer v. Hulse, 352 Mo. 451, 178 S.W. 2d 335, 399. There was a sufficient link in the circumstances here to connect the acts of the so-called "Ross" (Garrett) with respondent; and he, by his own acts and acquiescence, accepted them. The act of respondent in having the name on the telephone message slip surreptitiously changed from "Ross" to Roy, without disclosure, was, in itself, a fraud on the Commissioner. The very use of the name "Ross" by Garrett was a fraud. We accept and approve the findings and conclusions of the Commissioner, and we sustain the charges contained in Count I of the information.

Respondent, Ogle E. Veach, will be suspended from the practice of law in Missouri, on the charges of which he has herein been found guilty under Count II of the information, until September 24, 1958; he will be further suspended from the practice of law in Missouri, on the charges of which he has been found guilty under Count I of the information, for an additional period of one year, to begin on September 24, 1958, and to end on September 23, 1959. All costs are adjudged against respondent. It is so ordered. All concur.