In the Matter of the Application of HARRIS L. KIMBALL for Admission to Practice as an Attorney.

Second Department, January 8, 1973.

*Per Curiam.* The applicant, certified as having passed the Bar examination, has filed for admission to the Bar of this State. The Committee on Character and Fitness has reported that the

applicant possesses the requisite character and fitness for an attorney at law, " notwithstanding the admission of the applicant to being a homosexual and having engaged in homosexual acts." The committee withheld a further recommendation, however, because of other facts appearing in the application.

The applicant was admitted to the Bar of the State of Illinois on June 18, 1951. He has never practiced in that State. He was admitted to the Bar of the State of Florida on April 24, 1953 and engaged in active practice there. He was disbarred by the Supreme Court of Florida on September 6, 1957, based on charges filed by the Florida Bar (*State ex rel. Florida Bar* v. *Kimball,* 96 So. 2d 825 [Fla.]). He has not sought reinstatement to the Florida Bar.

It is the applicant's disbarment and the charges leading to the disbarment which concern us. The Committee on Character and Fitness made no further recommendation in this case because it believed that *Matter of Peters* (250 N. Y. 595, affg. 221 App. Div. 607) and subdivision 5 of section 90 of the Judiciary Law enunciated public policy that one disbarred in a sister State may not be admitted to the practice of law in this State without first having been readmitted in the sister State. We do not read either *Matter of Peters* or this statute to restrict so narrowly the power to admit to the Bar of New York. We think, rather, that the fact of disbarment and the charges underlying the disbarment must be considered together with all the other circumstances, so that the total background of the applicant may be viewed to determine his character and fitness.

In *Matter of Peters* the Court of Appeals merely answered in the negative a certified question reading as follows (250 N. Y. 595, 596): " Is applicant entitled as a matter of right to admission to the Bar of this State, in view of his claim that his disbarment in another State was void, and of his having been permitted to take, and having passed the bar examination in this State, after notice to the State Board of Law Examiners of his claim, and in view of the report of the Committee on Character and Fitness, submitting the matter to the court without recommendation, and finding good general character apart from the implication flowing from such disbarment? " The Appellate Division, Third Department, in denying the motion in question, which was by Peters for relief relating to his application for admission to the Bar, had stated that the validity of the disbarment in Alabama was assumed and that it was a " badge of unfitness " (*Matter of Peters,* 221 App. Div. 606, 609, *supra*). But the court further criticized the applicant for his diatribe against the judges

in Alabama who had disbarred him, saying (p. 609): "We now say with finality what we have said in effect repeatedly to. this applicant: we will not give countenance to his tirade against the courts of Alabama by even considering the validity of their disbarment judgment in his case."

Hence, in our opinion, *Matter of Peters* does not foreclose the exercise of judgment by this court in determining the character and fitness of an applicant, regardless of his disbarment in another State. Nor do we think that the recent amendment to subdivision 5 of section 90 of the Judiciary Law (L. 1969, ch. 743, eff. Sept. 1, 1969) removes our power.[1] It is limited, in our view, to an applicant who was disbarred in another State for the commission of a crime and has since been pardoned; the amendment requires only that the pardon be accompanied by readmission in the other State before the applicant may be considered for readmission here.

We believe that we are not bound to give full faith and credit to the Florida judgment of disbarment in the constitutional sense (U. S. Const., art. IV, § 1; cf. *Florida Bar* v. *Wilkes*, 179 So. 2d 193 [Fla.]; Ann. 173 A. L. R. 298; 7 Am. Jur. 2d, Attorneys at Law, § 20). Reasons of policy regarded as significant in one State in their effect on the conduct of attorneys may not prevail in another State, because of differing conditions; the sensitive office of an attorney must be continually subject to the control of the courts in which the attorney practices or seeks admission. The Federal courts do not automatically disbar an attorney because he is disbarred by a State court (*Theard* v. *United States*, 354 U. S. 278, 281–282; *Matter of Rhodes*, 370 F. 2d 411, cert. den. 386 U. S. 999). The rule which emerges from these and other cases is that high respect for the foreign determination of guilt must be accorded by the court to which the disbarred attorney applies for admission, but that the local court will make an independent judgment of the effect of that determination on the character and fitness of the applicant (see, also, *Matter of McCue*, 211 Cal. 57; *State Bd. of Law Examiners* v. *Brown*, 53 Wyo. 42). Where we find that we would have disbarred an attorney on the same facts, the applicant should be required to be readmitted in the first State before he may be admitted by us to the Bar in our State.

---

1. The amendment added the following to subdivision 5 of section 90: "However, if such attorney or counsellor-at-law has been removed from practice in another jurisdiction, a pardon in said jurisdiction shall not be a basis for application for re-admission in this jurisdiction unless he shall have been re-admitted in the jurisdiction where pardoned."

We turn, then, to the grounds upon which the Florida disbarment was effectuated. The applicant was charged and found guilty of behavior contrary to good morals and in violation of the laws of the State. We have reviewed the record and find that he had been accused of committing sodomy in 1955 on a public beach at night. He had been arrested previously by the police of Orlando, Florida, for the offense (Fla. Stat. Ann., § 800.01 *et seq.*); had given a bail bond; and thereafter forfeited it, which, according to him, is equivalent under Florida law to a plea of *nolo contendere.*

The Florida Bar, on notice to the applicant, conducted a hearing at which the sworn testimony of the police officers, the other alleged participant in the offense, the applicant and his witnesses was received. Sufficient cause for formal charges having been found, a proceeding was brought by the Florida Bar for disbarment. A Referee was appointed to hear the evidence; and testimony was received before the Referee. At the hearing before the Referee the applicant acted as his own attorney. The Referee found that the applicant had committed sodomy and the Supreme Court of Florida approved the disbarment of the applicant in 1957.

The applicant throughout maintained his innocence of the charges and he continues to maintain his innocence on the present application. The record indicates, however, that he changed his position concerning the events in issue during the Florida proceeding and that the Referee in his findings commented on this inconsistency.[2] On our independent view of the record, as we read it, the findings of fact were substantiated by the evidence; issues of credibility were raised by the evidence; and the Referee was entitled to decide those issues against the applicant.

The applicant submits that the disbarment in Florida should not be considered against him for several reasons. First, he points out that the statute under which he was arrested in 1955 was held unconstitutional by the Supreme Court of Florida in 1971 (*Franklin* v. *State*, 257 So. 2d 21 [Fla.]). We consider that this does not alter the case. On appeal from a judgment convict-

---

2. At the first session of the hearing the applicant testified that he and the other participant had only been swimming; at the second session he claimed that the other participant had made unwelcome advances to him, which he had rejected; and at the third session he asserted that the other participant by superior force had compelled him to assume a posture which the police officer had observed and which had resulted in his arrest. The other participant's testimony at the two sessions at which he appeared was essentially that the applicant had been the instigator in the encounter, though there were inconsistencies in that witness' testimony.

ing the appellant of the felony under the Florida statute, the court not only stated that its judgment, holding the felony statute (Fla. Stat. Ann., § 800.01 *et seq.*) void for vagueness and uncertainty, was prospective only, but also directed entry of judgment of guilty of a lesser included offense (a misdemeanor), to wit: the commission of an unnatural and lascivious act. In doing so, the court recognized the validity of the applicable Florida statute (Fla. Stat. Ann., § 800.02) which treated such act as a misdemeanor. Therefore, the decision referred to by the applicant did not affect his conviction and subsequent disbarment, but ratified it. Moreover, we note that in 1955, at the time of the incident leading to the applicant's conviction, sodomy, even between consenting adults, was a felony in New York (former Penal Law, § 690). Accordingly, under our then laws, if the applicant had been an attorney in our State, he would have been automatically disbarred and he could not be readmitted except upon a reversal of the conviction or a pardon (Judiciary Law, § 90, subd. 5). If he could not have been readmitted, initial admission may not be granted. The fact that at present, under the aforesaid Florida cases, the applicant's act would be considered a misdemeanor in Florida and would also be considered a class B misdemeanor under section 130.38 of our Penal Law (proscribing consensual sodomy) does not affect the validity or propriety of the 1957 disbarment. Moreover, we cannot overlook as trifling the conduct of the applicant in attempting to mislead the authorities in Florida by giving false testimony in the disbarment proceeding.

Second, the applicant contends he was a victim of entrapment in the incident upon which his disbarment was based. He stated before the Committee on Character and Fitness that he had achieved a reputation in Florida for protecting the rights of black people and that he believed that an Air Force Sergeant just prior to the incident approached him with suggestive advances because he was representing a client who had been assaulted by an Air Force enlisted man. The applicant did not produce any evidence in support of this contention before the committee; nor did he, as the record shows, make that contention at any time in the proceedings in Florida. We see nothing in those proceedings which indicates that the applicant was not granted a fair and full hearing in Florida.

Third, although the applicant does not specifically make the claim in his papers, it is implicit in his application that he urges that the moral climate toward homosexuality has so changed since 1957 that his disbarment on that ground should not deter

his admission to the Bar here. However, our Legislature still considers consensual sodomy an act of "deviate sexual intercourse" and, as such, a class B misdemeanor (Penal Law, § 130.38). Accordingly, so long as this statute is in effect, homosexuality, which, in its fulfillment, usually entails commission of such a statutorily proscribed act, is a factor which could militate against the eligibility of an applicant for admission to the Bar who proposes to pursue this way of life in disregard of the statute. We do not, however, see any need to presently reach this question, in view of the facts and circumstances heretofore noted, which, in our opinion, are sufficient to warrant denial of the application; nor do we find it necessary to anticipate the issue of the constitutionality of any legislation which deals with the private morality of homosexuals.

Accordingly, we conclude that the applicant lacks the requisite character and fitness to be admitted to the Bar in this State and that his application should be denied.

MARTUSCELLO and SHAPIRO, JJ. (dissenting). The Character Committee has unanimously found that the applicant *now* has the character and fitness required for admission to the Bar, even though he was and is a homosexual; and, so finding, it said it did not consider his homosexuality indicative of unfitness to practice law. But, despite its finding of fitness, the Character Committee did not expressly recommend that he be admitted, because it was unsure whether *Matter of Peters* (250 N. Y. 595) and subdivision 5 of section 90 of the Judiciary Law made his 1957 disbarment in Florida a conclusive bar to his admission presently in New York.

The majority is holding that neither *Peters* nor the Judiciary Law so restricts our power and that we are free to exercise our independent judgment as to whether the applicant is fit for admission, regardless of the applicant's disbarment in Florida some 15 years ago. We agree with the majority on this point. But the majority then proceeds to deny him admission on the basis of that old disbarment and the proceedings that led up to it, despite its correct conclusion that we are not bound by the disbarment and are free ourselves to determine whether the applicant is now fit to practice law in New York, and despite the unanimous finding of the Character Committee that the applicant is in fact now fit for admission. With that determination we do not agree.

As the majority has pointed out, we are not constitutionally bound to give full faith and credit to the Florida disbarment (*Florida Bar* v. *Wilkes*, 179 So. 2d 193 [Fla.]; Ann. 173 A. L. R.

298 *et seq.*; 7 Am. Jur. 2d, Attorneys at Law, § 20; cf. *Theard* v. *United States*, 354 U. S. 278; *Matter of Rhodes*, 370 F. 2d 411, cert. den. 386 U. S. 999). Nor should we recognize the Florida disbarment as a bar to admission here under the principle of comity, as that is merely a principle of interstate courtesy and Florida has not extended that courtesy to New York by so recognizing a New York disbarment (see *Florida Bar* v. *Wilkes, supra*). However, wholly apart from Florida's refusal of reciprocal courtesy, we cannot and should not blindly follow its disbarment holding, because, as the majority admits, differing conditions of place, time and social and moral climate may well dictate a different holding in New York today than was made in Florida in 1957 with respect to the applicant's fitness to practice law.

While the majority avoids the issue of homosexuality and homosexual acts as a purported badge of unfitness to practice law, we prefer to meet that issue squarely. To us it seems clear that the social and moral climate in New York (and probably throughout the Western World) has in recent years changed dramatically with respect to homosexuality and consensual homosexual acts. Today they are generally viewed as no more indicative of bad character than heterosexuality and consensual heterosexual acts (cf. *Matter of Kerma Rest. Corp.* v. *State Liq. Auth.*, 21 N Y 2d 111; *Matter of Becker* v. *New York State Liq. Auth.*, 21 N Y 2d 289). * In our opinion, an applicant for admission to the Bar in New York in 1972 cannot be considered unfit or lacking the requisite character to practice law, merely because he is an avowed homosexual; and we agree with the Character Committee's finding that this applicant is fit for admission to the Bar.

The majority says that the Florida disbarment of this applicant was based upon a charge of sodomy to which he had, in effect, interposed a plea of *nolo contendere*; that in 1955, when that offense was allegedly committed in Florida, it would have been a felony in New York; that if the applicant had then been convicted of that offense in New York he would have been disbarred automatically " and he could not be readmitted "; and that " if he could not have been readmitted, initial admission may not be granted." We disagree with that conclusion for various reasons. First, it is the general rule that a plea of *nolo*

---

* For example, a recent court decision, outside New York State, has held that a school teacher is not unfit to teach merely because he is a homosexual. Also indicative of the changed climate is the spate of stage shows, movies, TV shows, articles and books according sympathetic treatment to homosexuals and their problems as a " minority " group.

*contendere* has no effect beyond the particular case in which it is entered; it cannot be used against the defendant as an admission of guilt in any other criminal proceeding; it cannot be used to affect his civil rights or to effect a civil disqualification for a license; it cannot be used as an admission in a civil suit or proceeding based on the same act; and in such civil proceeding he is not estopped from denying the facts to which he pleaded *nolo contendere* (21 Am. Jur. 2d, Criminal Law, § 502; 22 C. J. S., Criminal Law, § 425[4], pp. 1206–1207). Secondly, under both Florida and New York law, the act allegedly committed by this applicant in 1955 would today be only a misdemeanor; an attorney convicted of a misdemeanor is not automatically disbarred but can be retained on the rolls if found of fit character despite that conviction. We are here concerned with this applicant's *present* fitness and, as previously noted, we believe him *now* of fit character even though he is a conceded homosexual. Thirdly, while it is unnecessary to reach this point in the present case, we note that our present statute making consensual sodomy a misdemeanor (Penal Law, §§ 130.00, 130.38) may well be unconstitutional, as unreasonably discriminatory, because it makes it a crime when committed by unmarried persons but not when committed by married persons.

Apparently referring to the applicant's claim of innocence and some discrepancies in his testimony at the different hearings therein held, the majority further finds him unfit because of his " conduct " in the 1955 disbarment proceeding in Florida. We do not find those discrepancies material and, despite them, the whole tenor of his testimony was consistent with his claim of innocence. Nor do we agree with the majority's implication (a) that these minor discrepancies, coupled with the testimony against the applicant in that proceeding, indicate that his claim of innocence was false, (b) that we must accept the finding of guilt in that proceeding and (c) that all this indicates improper conduct which establishes the applicant's *present* lack of fitness and good character. We are not bound to accept the finding of guilt in that proceeding or to assume that the applicant's claim of innocence is necessarily false. And even if we felt ourselves so bound, when we consider the applicant's youth at the time of the disbarment proceeding, the nature of the charge against him, the social and moral climate then prevailing with respect to such acts, the predicament he was in, and what must have been his then distraught emotional and mental state, we cannot view his attempts to exculpate himself as establishing a basic lack of good character. Certainly, they cannot be deemed to be such gross defects of character that even the healing passage

of 15 years of undisputed good behavior has not erased them. Again, it should be emphasized that it is the applicant's present fitness and character that we are here considering and that the Character Committee, having personally seen and examined him, has found him *now* of fit character despite that incident in his distant past. We should not upon a cold record disregard the conclusion to which the examiners came after such an examination (*Boyd* v. *Boyd,* 252 N. Y. 422, 429).

For all the foregoing reasons we vote to admit this applicant to the Bar.

HOPKINS, Acting P. J., MUNDER and LATHAM, JJ., concur in *Per Curiam* opinion; MARTUSCELLO and SHAPIRO, JJ., dissent and vote to grant the application, with an opinion.

Application for admission to the Bar denied.