**In re Dan D. WEINER, Respondent.**

No. 58923.

Supreme Court of Missouri, En Banc.

Dec. 8, 1975.

Thomas P. Meade, Palmyra, for informants.

Steven J. Stogel, Rosenblum & Goldenhersh, Clayton, for respondent.

SEILER, Chief Justice.

This case presents the question of how far must or should we go in disciplining a Missouri lawyer who has been suspended in another state.[1] The present disciplinary proceeding is based on our rule 5.19 which provides, in substance, that where a Missouri attorney has been adjudged guilty of professional misconduct in another jurisdiction, an order shall be served to show cause why said adjudication should not be conclusive of said misconduct for the purpose of discipline by this court. On October 16, 1974, the supreme court of Ohio entered an order suspending respondent Dan D. Weiner for an indefinite period, *Dayton Bar Association v. Weiner*, 40 Ohio St.2d 7, 69 Ohio Op.2d 83, 317 N.E.2d 783 (1974). Under the Ohio rules, this means suspension for at least two years (and probably longer) because not until the lapse of that period of time will the Ohio court entertain a petition for reinstatement. Rule V(21), Rules for Government of the Bar of Ohio.

The Ohio board charged respondent with, and after a hearing found him guilty of, the following misconduct:[2]

1. Willful breach of Canon 1, DR 1–102(A)(5) pertaining to conduct prejudicial to the administration of justice.

2. Willful breach of Canon 2, DR 2–106(A) in regard to excessive fees.[3]

3. Willful breach of Canon 2, DR 2–110(A)(2) pertaining to withdrawal of em-

---

1. Respondent was born and raised in Missouri and admitted to the Missouri Bar on April 27, 1956. For the past eleven years he has practiced in Dayton, Ohio, where he commenced practice in 1963, first with a firm, but since 1965 as a sole practitioner.

2. The Ohio canons of ethics are the same as ours, being taken from the American Bar Association Code of Professional Responsibility.

3. There were five instances of alleged excessive fees. The Ohio board found against respondent in only one of the five. Informants concede in their brief that they can find no basis supporting the finding, nor can we and so we disregard it.

ployment to the prejudice of his clients in three instances.

4. Willful breach of Canon 9, DR 9–102 in that he failed to preserve the identity of funds and property of a client.

The board found insufficient evidence to support additional charges of willful breach of Canon 1, EC 1–5, pertaining to disrespect for the legal system and the judges and willful breach of Canon 7, DR 7–106(C)(6) pertaining to conduct degrading to the court.

The Ohio supreme court affirmed the findings of the board and suspended respondent, as said. The record before us consists of the transcript before and the findings and report of the Ohio board, the information for show cause order filed in this court and respondent's answer thereto.

In his answer to the order to show cause Mr. Weiner set forth his reasons why the Ohio adjudication should not be conclusive for the purpose of discipline by this court and asked for an opportunity to be heard. In general, he maintains there was lack of due notice and a general unfairness as to one of the alleged Ohio violations; that another alleged violation did not constitute grounds for suspension; that the evidence does not justify the conclusion of the Ohio authorities that in three instances he withdrew from employment to the prejudice of his clients; that he was not guilty of the charge that he failed to preserve the identity of funds and property of certain clients and that he has important newly discovered evidence which should be heard and considered on the charge that he converted money for back child support payments to his own use. He contends that the Ohio court overreacted and that if any discipline is justified here it should be no more than a public reprimand.

 This court has charge of the admission to the bar of this state and the disciplining of its members. We are not required to discipline a Missouri lawyer who has been disciplined in a sister state. Our rule 5.19 is couched in terms of the lawyer being required to show cause why we should not discipline him, which recognizes the possibility that despite discipline by a sister state, we might choose not to discipline our member here. ". . . There may be cases in the future where, recognizing the finality of the foreign adjudication, we may not see fit to give it effect in Missouri . . ." *In re Veach*, 365 Mo. 776, 287 S.W.2d 753, 759 (banc 1956).

 A disciplinary proceeding involves the relationship between the courts and their officers. The courts of each state create, define, and control this relationship with no necessary reference to the status of its officers in the courts of another sovereign state. The fact that a person is admitted or disbarred to or from the bar of one state does not compel any other state to admit or disbar that person to or from its own bar. Missouri makes its own independent judgment as to the fitness of the members of its bar.

The matter is well put in *In re Kimball*, 40 A.D.2d 252, 339 N.Y.S.2d 302, 305 (1973), reversed on other grounds, 33 N.Y.2d 586, 347 N.Y.S.2d 453, 301 N.E.2d 436 (1973), as follows:

"We believe that we are not bound to give full faith and credit to the Florida judgment of disbarment in the constitutional sense . . . Reasons of policy regarded as significant in one State in their effect on the conduct of attorneys may not prevail in another State, because of differing conditions; the sensitive office of an attorney must be continually subject to the control of the courts in which the attorney practices or seeks admission. The Federal courts do not automatically disbar an attorney because he is disbarred by a State court . . . The rule which emerges from these and other cases is that high respect for the foreign determination of guilt must be accorded by the court to which the disbarred attorney applies for admission, but that the local court will make an independent judgment of the effect of that deter-

mination on the character and fitness of the applicant . . ."

What about respondent's fitness and character in light of the Ohio findings?[4] He was found guilty of commingling his and his clients' funds and of using a foreign trust account located in another state, but there is no evidence of any intent to defraud or that any client lost money as a result of the commingling. He was found guilty of contempt of court in failing to appear for a trial, for which he was fined $450.00, see State v. Weiner, 37 Ohio St.2d 11, 66 O.Op.2d 6, 305 N.E.2d 794 (1974), which the Ohio board said, standing alone, would merit a reprimand. He was found guilty in three instances of threatening to withdraw from employment without taking reasonable steps to protect the rights of his client. While it is not altogether clear, the Ohio board seemed to believe that if standing alone, a public reprimand would be merited in these instances.

The most serious transgression found by the Ohio board was that he applied $480.00 cash which had been deposited with him in trust for back child support to his fee without the client's consent. It is likely that this finding, more than any of the others, is what led the Ohio board to recommend suspension for an indefinite period of time rather than the public reprimand mentioned as being merited with respect to the other violations.

However, respondent asserts that after the Ohio court's decision, he, while cleaning out his office, discovered a tape recording of part of a conversation which shows that his client authorized and consented to his application of the above mentioned $480.00 to his fee.

 He asserts he is entitled to a hearing on the "authenticity and genuineness of this tape" and if it proves to be genuine and to support his contention that the client authorized the application of the money to

his fee, this serious charge should be dismissed. The Ohio court declined to hear this allegedly newly discovered evidence, but we see no reason why we should not do so in deciding the important question of whether respondent has properly conducted himself as a member of our bar and whether discipline is necessary to protect the public interest. As said in Florida Bar v. Wilkes, 179 So.2d 193, 197 (Fla.1965):

". . . In order properly to resolve this issue, this court and its agencies must, in every disciplinary proceeding, whether based upon acts of misconduct already adjudicated in another state or upon acts committed in this state, fully inform themselves concerning the nature of the misconduct and all the attendant circumstances. In doing this all available sources which can be properly utilized should be considered, including all evidence properly offered in the Florida proceeding and the record of proceeding in the sister state. Under this view Florida, although accepting the foreign determination of guilt, is left free to determine for itself the fitness of the accused attorney as affected by the acts of misconduct involved. It may accordingly order discipline which is more or less stringent than that awarded by the sister state."

We therefore conclude that before we arrive at a final decision this cause must be remanded to a master to be appointed by this court for an evidentiary hearing and findings of fact and recommendation on the issue of whether respondent had the permission of his client to use the $480.00 to apply on his fee.

The cause is therefore remanded with directions as above for hearing and report by a master to be appointed by this court.

MORGAN, BARDGETT and DONNELLY, JJ., concur.

---

4. Various judges before whom respondent practiced in Ohio described him as conducting himself in court as a gentleman, one who fights hard for his clients, is persistent but bullheaded.

FINCH, J., dissents in separate opinion filed.

HOLMAN and HENLEY, JJ., dissent and concur in dissenting opinion of FINCH, J.

FINCH, Judge (dissenting).

I respectfully dissent.

In my judgment the principal opinion is in conflict with the case of *In re Veach*, 365 Mo. 776, 287 S.W.2d 753 (banc 1956), but it neither overrules nor even attempts to distinguish that case. The short reference in the principal opinion to *Veach* indicates a view that the cases are consistent. In my judgment they are not.

In *Veach* an information was filed against respondent which in count one charged certain professional misconduct in St. Louis and in count two alleged the suspension of respondent in Illinois by reason of various acts for which the Supreme Court of Illinois ordered suspension for a period of five years. In his answer to count two, respondent admitted the suspension in Illinois but denied the sufficiency of the evidence in the Illinois hearing to support the action taken by that court.

On the basis of these pleadings, the Bar Committee filed a motion for judgment on the pleadings as to count two on the ground that respondent's answer and his return to an order to show cause presented no defense. This court sustained the motion for judgment on the pleadings and suspended respondent in Missouri on count two for the same period for which he had been suspended in Illinois. In so holding, the court discussed at some length the Illinois judgment and its effect. In so doing, it considered and relied upon the case of *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), which involved proceedings to strike from the roll of the bar of the United States Supreme Court an attorney who had been disbarred in Michigan. In discussing *Selling*, this court said, 287 S.W.2d at 758:

" * * * The court there held that the loss of the requisite qualification for membership in the Bar, by wrongful con- duct wherever committed, operates everywhere and furnishes reason in every jurisdiction for a revocation of license. The court further held that the effect of the judgment of the Michigan court, *In re Radford*, 168 Mich. 474, 134 N.W. 472 should be recognized unless: (1) there was a lack of due process; (2) there was such an infirmity of proof as to create a clear conviction that the conclusion should not be accepted; or (3) there ap- peared some other 'grave reason' which would indicate that the result would con- flict with the court's duty under the prin- ciples of 'right and justice.' In our opin- ion, none of those exceptions or qualifica- tions are applicable here."

In harmony with the ruling in *Selling*, the court went on to rule, l. c. 758:

" * * * We now hold that on the present record the judgment and opinion of the Illinois Supreme Court constitutes and is a sufficient ground for disciplinary action by this court. In so ruling we are supported, directly or in principle, by the following authorities: *People ex rel. Col- orado Bar Ass'n v. Lindsey*, 86 Colo. 458, 283 P. 539; *State Board of Law Examin- ers v. Brown*, 53 Wyo. 42, 77 P.2d 626; *In re Leverson*, 195 Minn. 42, 261 N.W. 480; *In re Isserman*, 345 U.S. 286, 73 S.Ct. 676, 97 L.Ed. 1013; *Copren v. State Bar*, 64 Nev. 364, 183 P.2d 833, 173 A.L.R. 284; *In re Ulmer*, 268 Mass. 373, 167 N.E. 749; *In re Van Bever*, 55 Ariz. 368, 101 P.2d 790, and *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585, supra."

In analyzing some of the above cited cases, the court then went on to point out that some of the cases appear to rely on a theory of comity and others recognize the foreign judgment as one entitled to full faith and credit. The court then said, 287 S.W.2d at 759:

" * * * Actually, the matter would seem to involve both doctrines. *The judgment appears to us to be one entitled to full faith and credit in so far as it finally adjudicates that in Illinois the re- spondent was guilty of the misconduct*

*with which he was charged. Such being true, we cannot, in any sense, permit that issue to be relitigated here. Such a judgment is only subject to attack for: (1) lack of jurisdiction over the subject matter; (2) failure to give due notice to the defendant; and (3) fraud in the 'concoction' of the judgment. Howey v. Howey,* Mo., 240 S.W. 450; *Leichty v. Kansas City Bridge Co.,* 354 Mo. 629, 190 S.W.2d 201; *Kilbourn v. Kilbourn,* 354 Mo. 17, 190 S.W.2d 206. *None of these grounds appears here; and respondent appeared and contested the Illinois proceedings. We cannot and will not reinvestigate the merits of those charges.*" (Emphasis supplied.)

From the foregoing it is clear that this court in *Veach* held that in the absence of the enumerated grounds for attack, namely, lack of jurisdiction, failure to give due notice or fraud in obtaining the judgment, the judgment in the foreign court with respect to the merits of the charges and the respondent's guilt thereof will be final, not subject to reinvestigation or redetermination by this court. The court ordered suspension for the same period as Veach had been suspended in Illinois. It is true that the court in *Veach* used the language quoted in the principal opinion, namely, "[t]here may be cases in the future where, recognizing the finality of the foreign adjudication, we may not see fit to give it effect in Missouri. * * * *" 287 S.W.2d at 759. However, that language indicates to me that the court was saying that in some future case it may decide not to impose the discipline ordered by the other state, even though it recognizes the finality of its adjudication with reference to the conduct charged. That language does not indicate to me an intention to relitigate the merits of the charges in this court. Yet, that is exactly what the principal opinion proposes in this case.

The Ohio Supreme Court found that respondent wrongfully applied to his own fee the sum of $480 deposited with him in trust for back child support. Thereafter, it declined to reopen the case on the basis of an allegedly newly discovered tape. Under *Veach* that issue should not be reinvestigated or relitigated in this court unless the Ohio judgment is subject to attack on the basis of (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to the defendant, or (3) fraud in the "concoction" of the judgment. None of these are found by the principal opinion. Even so, it proposes to appoint a master and to have him conduct a hearing as to the authenticity of the tape, after which he is to make findings and recommendations as to whether respondent had permission to apply the $480 as he did. In my judgment this does not entail merely listening to the tape and concluding whether it is authentic. The opinion, necessarily, directs a reinvestigation and a redetermination as to whether respondent did or did not misapply $480 of trust funds entrusted to him by his client because petitioner claims that he was authorized and that this charge should be dismissed. That means that the master must go to Ohio, take testimony from the client and others who have any knowledge as to this issue, determine when the alleged conversation took place and what prompted it, whether it was before or after application of this money to respondent's fee, whether the consent, if given, was to excuse what already had been done or was authorization for subsequent application, check respondent's bank accounts, if necessary, and investigate any other relevant matters pertaining to this issue. That definitely is not what *Veach* would call for or authorize. Adoption of such a rule would in future cases mean that this court on a case-by-case basis, without any specific guidelines or criteria such as those spelled out in *Veach* as exceptions, would reinvestigate and redetermine the issue of whether a lawyer is guilty of that misconduct already found by the court of another state. In my view, that amounts to overruling *Veach* without saying so.

I would not redetermine the question of whether respondent improperly applied

trust fund money to his fee. I would accept the Ohio determination of that issue. I would proceed to determine, in the light of the testimony heard in Ohio, plus briefs and arguments in this court, whether we will apply the same discipline as Ohio imposed (as this court did in *Veach*) or whether we will impose different punishment, as we have just done in the case of Gary Max Eldredge, 530 S.W.2d 221 (Mo.), decided concurrently with this case. This would be consistent with the decision in *Veach*.