**In re Elgene C. VER DUGHT,
Respondent.**

**No. 73066.**

Supreme Court of Missouri,
En Banc.

Feb. 25, 1992.
Rehearing Denied March 24, 1992.

Louis J. Leonatti, Ann P. Hagan, Mexico, for informant.

Willard B. Bunch, John Edward Cash, Kansas City, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

RENDLEN, Judge.

In this disciplinary proceeding respondent is charged with subornation of perjury, presenting false evidence and engaging in conduct prejudicial to the administration of justice in his representation of a client before a federal Administrative Law Judge (ALJ). The sections allegedly violated are, 3.3(a)(1), (2), (4), 3.3(a), (b), and 8.4(c), (d), Rule 4 of the Rules of Professional Conduct.

After hearing, the Special Master found respondent guilty of having violated the cited rules and recommended a 90–day suspension from the practice of law. Fully cognizant of the master's findings and conclusions, it remains this Court's responsibility to determine the facts and draw its own conclusions. *In re Gray*, 813 S.W.2d 309, 310 (Mo. banc 1991).

In disciplinary proceedings, guilt must be established by a preponderance of the evidence, *In re Elliott*, 694 S.W.2d 262, 263 (Mo. banc 1985), and from our review of the record we find ourselves in agreement with the master's findings.

Respondent, who practices in Higginsville, has during the past twelve years handled approximately ten Social Security ben-efit cases, and among his clients was Vera Orndorf, born in 1939, who married David Brown in 1947. In 1979, she divorced Brown, who died four years later, and upon divorce retook her maiden name. While living in Oregon, Vera met a man named Gilmore, whom she married in 1984, and in September of that year Vera filed for assistance in Oregon under the Supplemental Security Income (SSI) program. Shortly thereafter, she moved to Missouri, where in early 1985, she divorced Gilmore but retained his surname. On May 20, 1985, following denial of her application for SSI benefits, Vera instituted an appeal of the administrative ruling.

On June 26, Vera retaining respondent as counsel, entered a contingent fee contract providing for payment of 25% of past benefits awarded. On August 22, she filed an application, under the name Gilmore, for Disabled Widow's benefits (DWB) based upon the earnings of her deceased first husband, Brown. When both applications (DWB and SSI) were denied, Vera appealed.

On July 26, 1986, Vera filed a concurrent Request for Hearing on the SSI and DWB applications, and prior to the hearing scheduled for October 15, Vera informed respondent she was living with a Verl Croney and intended to marry him. Though respondent advised her to "to go slow and to not marry him at this time without further consideration and a lot of thought about it," she took little heed of this advice, and married Verl on September 22, 1986, taking Croney as her name. Respondent met the newly married couple at his office and, though it is not clear when Vera informed him she had changed her name to Croney, sometime prior to December respondent became aware of the change and Vera's applications before the SSA remained under the name Gilmore.

The initial hearing, set for October 15, was postponed until December, and Vera arrived for the hearing in Kansas City with her husband and sister on December 23. While reviewing Vera's testimony, her sister voiced concern to respondent concerning the effect of Vera's remarriage on her

eligibility for DWB and SSI benefits and respondent told Vera "that if your name [1] doesn't come up, don't mention it," but added that if asked directly concerning that matter, she was to respond truthfully. Prior to the hearing, Vera removed her engagement ring and wedding band and placed them in her purse.

Respondent represented Vera at the hearing before Judge Donald Starr [2] in which there was no opposing counsel. The witnesses testified under oath and in the course of Vera's testimony, the following exchanges occurred:

Question [Respondent]: Could you state your name and address?

Answer [Vera]: Vera Mae Gilmore, Route 1, Box 154 Bates City, Missouri.

.    .    .    .    .

Q: During your married life, which I believe was to two different husbands—
A: Yes.

.    .    .    .    .

Q: Now, Vera, your last name now is Gilmore, but at the time in Oregon you were married to David Brown? That was your husband?
A: Yes, I was married to David Brown. I was married for 31 years.

.    .    .    .    .

Q [Judge Starr]: How did you get here today?
A: With my sisters, and a fellow brought us up.

.    .    .    .    .

On two other occasions during the hearing, respondent referred to his client as "Vera Gilmore" and the ALJ at the close of the hearing so addressed her. Apparently the ALJ met the parties informally immediately before the hearing and Vera had been introduced to him as Vera Gilmore.

On March 30, 1987, denying DWB, Judge Starr noted Vera was "not presently married", however he found she qualified for SSI, with benefits to be determined by the

SSA. Respondent received copies of these determinations.

On April 2, Vera filed a statement seeking continuing eligibility for SSI under the name Vera Gilmore, claiming she was widowed and living with Verl Croney, and though she and Croney were friends they did not hold themselves out in the community as man and wife. Respondent was not present when Vera filed this form with the Social Security office in Warrensburg, but Vera in subsequent sworn testimony explained she continued the lie regarding her name and marital status because she feared the consequences of her actions at the ALJ hearing.

Respondent received copies of statements Vera had filed and based on those statements, Vera was determined to be eligible for $7,206.30 in back SSI benefits. Upon receiving the benefits check, Vera contacted respondent, who took her to his bank where she cashed the check, paid respondent his $1,800 fee and left with the remainder of the money.

In March 1988, during a routine monthly review, a Social Security claims representative determined that Vera had lied concerning marital status and the financial support she was receiving from Verl Croney. Based upon the new data, it was determined Vera was not entitled to receive SSI benefits following her September 1986 marriage and had thus been overpaid in the amount of $4,112.04. To further investigate the "fraud", the matter was directed to John Osgood, Assistant United States Attorney, who after interviewing Vera, decided to investigate respondent's role in the matter.

Vera and her sister, Glenna, contacted respondent separately by phone, and those conversations, with Vera's and Glenna's consent, were taped by agents for the Department of Health and Human Services. In the course of these conversations, the following occurred:

Vera: At the hearing, uh, you told me to take off my wedding rings and you also

---

1. As the special master suggests, the "name" could only have reference to "Croney."

2. Judge Starr could not be located, hence we have no testimony as to his recollections of these matters.

told me, uh, to some of the things you told me and to not turn my name is as Croney. Remember that?

Respondent: Right, because we were filing under your name as Gilmore.

.   .   .   .   .

Vera: Well, was you supposed to tell the judge that I was married?

Respondent: Well, not that I know of, I mean that never did come up, did it? I don't think it did. I don't recall that, I'd have to look.

Vera: If you remember right, you told me before and told my sister and I and told us all to not tell it when we went in there.

Respondent: Right

.   .   .   .   .

Thereafter, respondent was charged in federal court with suborning perjury and making a material misrepresentation of matters within the jurisdiction of the Department of Health and Human Services. Though respondent was found not guilty by the jury and discharged, Osgood, notwithstanding that acquittal, filed the complaint with the Advisory Committee which is now before this Court.

The special master found respondent had violated Rule 3.3 of Rule 4 of the Rules of Professional Conduct. Rule 3.3 provides in part: "a lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;" and "(4) offer evidence that the lawyer knows to be false."

We conclude that false testimony was presented to Judge Starr at the administrative hearing of which respondent was aware and that respondent was in part responsible for eliciting such testimony. Vera testified her name was Gilmore when respondent knew it was not. Respondent stated Vera had had only two husbands when he knew Vera was married to her third husband. Respondent on several occasions referred to Vera as Gilmore vis-a-vis Croney, and at no time did he attempt to correct the false impressions resulting from these misrepresentations.

Respondent insists the marital status was immaterial to Vera's eligibility for DWB or SSI because to be eligible she needed only to prove: a) her former husband was insured when he died, b) she was married to the former husband for at least ten years immediately prior to the divorce, c) she was at least fifty years of age and has a listed impairment as defined by the regulations. The impairment must have commenced not later than seven years after the insured former husband died, and d) she was unmarried, unless she is now at least age fifty but not yet age sixty, she remarried after age fifty and after the insured former husband died, her listed impairment began within the specified seven year period, and before her remarriage. 20 C.F.R. § 404.336 (1987). Judge Starr in denying Vera benefits under DWB found she did not have an impairment which "is medically equivalent to an impairment listed" in the regulation.

To be eligible for SSI it was necessary for Vera to prove she was: a) disabled under the Social Security Act by an inability to engage in any substantial gainful activity due to physical or mental impairments, and b) the impairments must be expected to either result in death or last for a continuous period of not less than twelve months. Although remarriage is not among the criteria to determine eligibility, the monetary resources of a spouse living in the household are factored in as an offset to determine the amount of benefits paid to the eligible recipient. 20 C.F.R. § 416.1202, Subpart L (1987).

Respondent argues that because remarriage is not material for a finding of eligibility under SSI and Judge Starr denied DWB on the basis of impairment, no material fact was falsified. A material fact is one of such probative force as would control or determine the result in the litigation. *Olson v. Auto Owners Insurance Company*, 700 S.W.2d 882, 885 (Mo.App. 1985). Respondent's attacks upon the special master's finding of a violation of Rule 3.3(a)(1) and (a)(2) is correct. Vera's mari-

tal status, even if revealed to Judge Starr at the hearing, would not have effected his finding of no impairment. As to SSI, such is not a factor to be taken into consideration for eligibility and Judge Starr made no finding as to marital status. Nevertheless the finding of the special master that respondent violated Rule 3.3(a)(4) remains. Respondent knew when Vera testified she had remarried and her new name was Vera Croney. Respondent does not deny this, and though he advised his client to tell the truth, portions of Vera's testimony were designed to mislead Judge Starr. Respondent himself referred to Vera by her former surname and to the fact she had been married only twice.

 The special master found respondent had violated Rule 8.4(c) and (d) which provide it constitutes professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" and "engage in conduct that is prejudicial to the administration of justice." The special master's finding as to Rule 8.4(c) and (d) is supported by the evidence.

The primary purpose of disciplinary proceedings is to protect society and maintain the integrity of the legal profession, *In re Adelman*, 734 S.W.2d 509, 511 (Mo. banc 1987), and a variety of sanctions are available to accomplish that end. The most severe, disbarment, is typically reserved for clear cases of gross misconduct, those in which the attorney is demonstrably unfit to continue in the profession. *In re Waldron*, 790 S.W.2d 456, 461 (Mo. banc 1990). Respondent's actions cannot be said to merit such drastic action. He has presented evidence that he has contributed to his profession, community and church and enjoys a good reputation in his community. However, we feel suspension is warranted. Respondent's participation was not passive, he specifically asked questions of witnesses at the hearing calling for answers he knew were false.

Accordingly for all the conduct described herein, it is ordered that respondent be and is hereby suspended from the practice of law for six months.

All concur.