(No. 67038.—

*In re* MICHAEL DAVID ETTINGER, Attorney,
Respondent.

*Opinion filed April 20, 1989.*

352

Jerome Larkin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sam Adam, of Chicago, for respondent.

JUSTICE MILLER delivered the opinion of the court:

On July 24, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (the Administrator) filed a one-count complaint charging the respondent, Michael David Ettinger, with professional misconduct based upon his involvement in a scheme to bribe a police officer. A panel of the Hearing Board found that the respondent had knowingly participated in the bribery of a police officer and recommended that he be suspended from the practice of law for one year. Both the Administrator and the respondent filed exceptions to the Hearing Board's report and recommendation. The Review Board concurred in the Hearing Board's findings of fact and conclusions of law, but recommended that the respondent be suspended for three years. The respondent filed exceptions with this court pursuant to Supreme Court Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

The circumstances in this case date to 1977 and include litigation in the State and Federal courts. The respondent now assigns error to the Hearing Board in the admission of evidence and the delay by the Administrator in bringing charges against him. Respondent additionally challenges the sufficiency of the evidence and the sanction imposed. A review of the procedural history and facts underlying the case is therefore necessary.

Respondent was licensed to practice law in Illinois in November 1970. After admission to the bar, respondent began work as an assistant State's Attorney in Cook County. While employed as an assistant State's Attorney, respondent met John Gervasi, who was also an assistant State's Attorney in Cook County. During their tenure in

the State's Attorney's office, respondent and Gervasi had occasion to meet in court, at seminars, and at social gatherings affiliated with their work. In November 1973, respondent left the State's Attorney's office and established a private practice in Oak Lawn, Illinois. The majority of respondent's private practice was concentrated in criminal law. Respondent remained in contact with Gervasi, who had also left the State's Attorney's office to enter private practice. The two men occasionally acted as co-counsel on cases and also referred work to each other.

In early November 1977, Gervasi contacted respondent by telephone. Gervasi informed respondent that he believed he was about to be appointed an associate judge in Cook County. Gervasi then spoke to respondent regarding a case Gervasi was working on. The defendant in the case, Charles Soteras, a close personal friend of Gervasi, had been charged with automobile theft. Gervasi indicated that the State had a strong case against Soteras. Gervasi additionally told respondent that he had spoken with the arresting officer, Daniel Furay. Gervasi and Furay had discussed the payment of money to Furay, for which Furay was to persuade the complaining witness in the Soteras case to drop the charges. Gervasi asked respondent to appear in court on behalf of Soteras. Although respondent refused to appear, he did agree to contact Furay on behalf of Gervasi. Respondent was already acquainted with Furay from previous cases he had worked on.

On Thursday, November 3, 1977, at 11:05 a.m., Furay contacted the respondent by telephone. Furay indicated he was calling from a pay phone. Respondent informed Furay that the Soteras case was his matter, but that he could not talk at that time. The respondent attempted to arrange a meeting with Furay without success. Respondent then asked Furay whether he could control the com-

plaining witness in the Soteras case. Furay indicated that it might be a problem. The two men discussed alternative ways to dispose of the case and the payment of money to Furay for his cooperation. Respondent told Furay he would remain in contact with him.

Over the next 36 hours the respondent made five telephone calls to Furay. During these conversations, respondent and Furay discussed the payment of money to Furay. In return for the money Furay was to persuade the complaining witness in the Soteras case to drop the charges. Furay did not disclose to respondent that at the time of the conversation Furay was acting in concert with the State's Attorney's office and that all of the telephone calls were being recorded.

On February 23, 1978, an indictment was filed in the circuit court of Cook County charging respondent, Gervasi, and Soteras with 11 counts of bribery and conspiracy to commit bribery. Respondent, Gervasi, and Soteras subsequently moved to suppress evidence of all of the recorded telephone conversations. Defendants argued that the conversations were recorded in violation of the Illinois eavesdropping statute. On March 27, 1979, the circuit judge granted the motion to suppress the evidence, finding that the telephone conversations were recorded in violation of the Illinois eavesdropping laws. On appeal, this court affirmed the order of the circuit judge suppressing the evidence. (*People v. Gervasi* (1982), 89 Ill. 2d 522.) We agreed that the transcripts of the telephone conversations were obtained in violation of the eavesdropping statute and were properly suppressed. We also found that the testimony of Furay was admissible and remanded the matter to the circuit court for further proceedings.

On September 14, 1982, the case was nol-prossed on motion of the State's Attorney. On that same date, respondent was indicted by a Federal grand jury in a

seven-count indictment charging him with conspiracy, fraud and racketeering. (*United States v. Gervasi* (N.D. Ill. 1983), 562 F. Supp. 632.) The Federal indictment was based upon the same facts alleged in the State case. The Federal case proceeded to trial and on June 15, 1983, a jury found respondent not guilty. A mistrial was declared as to Gervasi. Gervasi was subsequently retried on the same charges and found guilty.

On July 29, 1983, some six weeks after respondent's acquittal in Federal court, the respondent was notified that his conduct in connection with the bribery scheme was being investigated by the Administrator. On May 1, 1984, respondent filed a motion for leave to file a petition for writ of *mandamus* with this court challenging the Administrator's use of his Federal court testimony in connection with the disciplinary investigation. On May 22, 1984, this court denied respondent's motion for leave to file a petition for writ of *mandamus*.

On August 27, 1984, respondent filed a verified complaint in the circuit court of Cook County seeking to enjoin the Administrator from using evidence in his disciplinary hearing which was obtained in violation of the Illinois eavesdropping laws. On October 16, 1984, the circuit judge granted the Administrator's motion to dismiss the complaint. Respondent filed a notice of appeal from the circuit court order. On January 7, 1986, the appellate court issued its opinion in the matter affirming the dismissal of the complaint. On March 4, 1986, respondent filed a petition for leave to appeal with this court. On June 3, 1986, respondent's petition was denied.

On July 24, 1986, the Administrator filed a one-count complaint charging respondent with conduct in violation of Rule 1—102(a)(3) (engaging in illegal conduct involving moral turpitude); Rule 1—102(a)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); Rule 1—102(a)(5) (engaging in conduct which is prejudi-

cial to the administration of justice); Rule 7—102(a)(5) (knowingly making a false statement of law or fact); Rule 7—102(a)(6) (participating in the creation or preservation of evidence when he knows or when it is obvious that the evidence is false); and Rule 7—102(a)(7) (counseling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent). 107 Ill. 2d Rules 1—102(a)(3), (a)(4), (a)(5), 7—102(a)(5), (a)(6), (a)(7).

On October 31, 1986, respondent filed a motion to dismiss the complaint asserting that evidence of his alleged misconduct was procured in violation of the Illinois eavesdropping laws and that the complaint was barred by *laches*. Respondent further asserted that his acquittal in the Federal district court required dismissal of the complaint. On November 21, 1986, the Hearing Board entered an order denying respondent's motion to dismiss.

Hearing on the complaint filed by the Administrator commenced on December 19, 1986. The hearing was then continued to and concluded on March 6, 1987. Over respondent's objections, the Administrator initially offered 10 exhibits into evidence. The exhibits consisted of the transcripts of nine monitored telephone conversations between Furay and respondent or Furay and Gervasi. The tenth exhibit was a transcript of respondent's testimony in his trial before the Federal district court.

The Administrator next called respondent as an adverse witness. Respondent testified that he was then 41 years old, had graduated from the John Marshall Law School in 1970, and was admitted to practice that same year. Respondent worked as an assistant State's Attorney for Cook County for approximately the next three years. During this time, respondent became acquainted with John Gervasi, a fellow assistant State's Attorney.

Respondent admitted that while he was employed as an assistant State's Attorney he had occasion to read

and prosecute bribery cases. After entering private practice, respondent defended approximately five individuals charged with bribery. Due to the nature of his work, respondent was often in contact with arresting police officers. It was the practice of police officers to arrange for the appearance of witnesses at preliminary court proceedings. Respondent testified that if a witness failed to appear it was within the discretion of the assistant State's Attorney to further pursue the case. Additionally, respondent stated that if a witness somehow communicated that he did not wish to appear, the pending charges would be dropped.

Respondent then explained his relationship with Gervasi. He admitted that he agreed to contact Furay and that he was involved in the initial negotiations to pay Furay to procure the dismissal of the Soteras case. He indicated that prior to his involvement in the Soteras case he became aware of *People v. Powell* (1977), 48 Ill. App. 3d 723, a case which held that the payment of money to a police officer relating to the presence of a witness was not bribery. Although respondent considered *Powell* an unusual opinion, he stated that he justified his conduct in the Soteras matter through the holding in *Powell*. Respondent admitted that he considered the payment of cash to a police officer to be morally wrong. He further conceded that there was no dispute that bribery occurred. Respondent, however, maintained that he withdrew from the scheme prior to the actual criminal act. The hearing panel took judicial notice that *Powell* was subsequently reversed by this court after respondent's conduct here. *People v. Powell* (1978), 72 Ill. 2d 50.

At the close of the Administrator's case in chief, respondent moved to dismiss the charges of violation of Rule 7—102(a)(6) (participating in the creation or preservation of evidence when he knows the evidence is false) and Rule 7—102(a)(7) (counseling or assisting his client

in conduct that the lawyer knows to be illegal or fraudulent), alleging insufficient proof. The Hearing Board denied respondent's motion with respect to Rule 7—102(a)(7), but granted the motion with respect to Rule 7—102(a)(6).

Respondent presented seven character witnesses in his behalf. Four circuit court judges, an associate judge, and two attorneys attested to respondent's excellent reputation in the legal community for honesty and integrity, as well as truth and veracity. Associate Judge Daniel P. Glecier also testified that respondent was adversely affected by the nine years of litigation which preceded the disciplinary hearing. According to Glecier, respondent withdrew from his professional status immediately after being indicted for bribery. Respondent did not go to court or deal with any clients during the pendency of the State and Federal criminal proceedings.

The respondent also testified in his own behalf. Respondent did not dispute that he engaged in a series of conversations with Furay on November 3 and 4, 1977, as reflected in Administrator's exhibits 2 through 6. Respondent testified that the conversations with Furay were precipitated by a request received from Gervasi. Gervasi originally asked respondent to handle the Soteras case. When respondent refused, Gervasi told respondent that Soteras was a very close friend. Respondent testified that he agreed to make the telephone calls to Furay because he felt pressured and that he somehow rationalized his conduct under the *Powell* decision. The conversations between respondent and Furay took place during a 36-hour period. Respondent testified that he has not spoken to Furay since.

Respondent additionally stated that after his final conversation with Furay on November 4, 1977, he immediately contacted Gervasi. Respondent told Gervasi that he no longer wanted to be involved in the scheme and

did not want to speak with Furay again. Respondent told Gervasi to just "forget it" and to have Soteras retain another attorney. Respondent stated that Gervasi agreed. At that point, respondent believed that Gervasi would not go through with the scheme. In December 1977, during a conversation with Gervasi, respondent learned that Gervasi did, in fact, make two payments to Furay. Shortly thereafter, respondent, Gervasi, and Soteras were indicted for the offense of bribery in the circuit court of Cook County.

Respondent testified to the adverse effects he suffered as a direct result of his involvement in the Soteras matter. After the State indictment, respondent ceased to practice law. Respondent did not practice for a period of approximately eight months due to extensive newspaper publicity and tremendous stress. Respondent also ceased to practice law for a nine-month period during the pendency of his case in the Federal district court. In addition to the professional problems respondent endured, he also suffered from serious personal setbacks. Respondent's marriage almost ended and respondent had to undergo psychiatric counseling.

Respondent explained his procedure for keeping abreast of current changes in the law and described his upkeep of a trial notebook in which he summarizes important cases. Respondent testified that while he has been engaged in private practice, he has handled five or six *pro bono* cases each year. Respondent additionally stated that he contributes to the Multiple Sclerosis Foundation, the Anticruelty Society, the March of Dimes, and Temple B'nai Torah, and sponsors a little league team. Respondent expressed great remorse for his involvement in the Soteras matter. Since the incident in 1977, respondent has not been involved in any illegal activity. Respondent explained there is no other evidence of pro-

fessional misconduct during his entire time as a member of the Illinois bar.

In rebuttal, the Administrator called John Gervasi. Gervasi testified that he was licensed to practice law in 1969, but was currently disbarred because of his 1984 bribery conviction in Federal district court as a result of this incident. Gervasi explained the arrangement with Furay. According to Gervasi, respondent was to contact Furay and make the preliminary arrangements to procure the dismissal of the Soteras case. In return for the dismissal, Gervasi was going to pay Furay $2,000. Furay was going to receive $1,000 before the case was dismissed and $1,000 afterwards.

Gervasi testified that shortly before he delivered the first payment to Furay he spoke with respondent. During this conversation, respondent told Gervasi that he did not like the fact that Furay demanded $1,000 payment before the case was dismissed. According to Gervasi, the only topic of conversation was the payment of money to Furay. Gervasi testified that he could not recall whether the respondent expressed any desire to disassociate himself from the scheme. Gervasi stated that he did not indicate to respondent any intent on his part not to proceed with payment to Furay.

Both the respondent and the Administrator filed exceptions to the decision of the Hearing Board. Respondent raised two issues before the Review Board. First, respondent challenged the Hearing Board's admission into evidence of the transcripts of his telephone conversations with Furay and the transcript of his testimony in the Federal district court. Second, respondent maintained that the disciplinary proceeding against him was barred by *laches*.

The Review Board issued its report and recommendation on March 25, 1988. The Review Board concurred with the findings and conclusions of the Hearing Board

with respect to proof of the charges against respondent. The Review Board did not reach the substance of respondent's challenge to the admission of the transcripts of the telephone conversations and respondent's Federal court testimony. The Review Board found that the charges against respondent were supported by other clear and convincing evidence. The Review Board further found *laches* inapplicable, noting that the delay was attributable, in large part, to actions taken by the respondent himself. The Review Board, however, disagreed with the quantum of discipline recommended by the Hearing Board. The Review Board, with one member dissenting, recommended that respondent be suspended from the practice of law for a period of three years. The dissenting member recommended disbarment. From this report and recommendation, the respondent has filed exceptions with this court.

Respondent now raises numerous issues challenging the validity of the Hearing and Review Boards' determinations. First, respondent claims the Hearing Board erroneously admitted transcripts of telephone conversations obtained in violation of the Illinois eavesdropping laws. Second, respondent maintains there was prejudicial delay in the bringing of disciplinary charges. Third, respondent argues that his verdict of acquittal in the Federal district court should have barred any disciplinary proceedings. Fourth, respondent maintains the finding of misconduct is not supported by sufficient evidence, as he withdrew from the bribery scheme. Finally, respondent challenges the recommended sanction.

Respondent initially challenges the Hearing Board's admission of the transcripts of the monitored telephone conversations and the transcript of his testimony from his trial in the Federal district court. Respondent claims that the telephone conversations are inadmissible under the Illinois eavesdropping laws and that the testimony in

Federal court, which was in response to the telephone conversations, should be excluded as the "fruit of the poisonous tree." Section 14—5 of the Illinois Eavesdropping Act provides:

> "Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial, or any administrative or legislative inquiry or proceeding, nor in any grand jury proceedings ***." (Ill. Rev. Stat. 1985, ch. 38, par. 14—5.)

Since this court has held that the telephone conversations between Furay and respondent or Furay and Gervasi were obtained in violation of the eavesdropping laws (*People v. Gervasi* (1982), 89 Ill. 2d 522), respondent maintains the evidence is inadmissible in his disciplinary proceedings pursuant to section 14—5.

The Administrator asserts that the eavesdropping statute is inapplicable to disciplinary proceedings. Moreover, the Administrator argues that the issue of the admissibility of the evidence has already been determined (*Ettinger v. Rolewick* (1986), 140 Ill. App. 3d 295), and the respondent is bound by the decision. Finally, the Administrator contends that since the transcripts of the monitored telephone conversations are properly admissible in a disciplinary proceeding there is no primary illegality to taint the transcripts of respondent's testimony in the Federal district court proceedings.

In *Ettinger v. Rolewick* (1986), 140 Ill. App. 3d 295, respondent appealed from the Cook County circuit court's denial of his motion seeking injunctive relief. In the circuit court, respondent sought to enjoin the Administrator from "utilizing the transcript of (respondent) plaintiff's testimony in *United States v. Gervasi* [(N.D. Ill. 1983), 562 F. Supp. 632], and all other fruits of the 1977 eavesdropping previously held unlawful by the Illinois Supreme Court in *People v. Gervasi* [(1982), 89 Ill. 2d 522, 434 N.E.2d 1112]." (*Ettinger*, 140 Ill. App. 3d at

295.) The circuit court ruled that it had jurisdiction, but dismissed the case.

The appellate court found that the circuit court was without subject matter jurisdiction to determine an evidentiary question in a disciplinary proceeding because "[t]he Illinois Supreme Court has original and inherent jurisdiction to regulate the practice of law." (*Ettinger*, 140 Ill. App. 3d at 298.) The *Ettinger* court concluded that "[t]o preclude the supreme court from exercising its jurisdiction in considering the fitness of an attorney would violate the separation of powers doctrine [Ill. Const. 1970, art. II, §1], and would be an unwarranted application of the Illinois eavesdropping statute." (*Ettinger*, 140 Ill. App. 3d at 301.) The *Ettinger* court properly ruled that the admission of evidence in a disciplinary proceeding is a matter within the sole jurisdiction of this court.

Since the case was dismissed for lack of jurisdiction, the Administrator's claim that the issue of admissibility of evidence in a disciplinary proceeding has been determined is in error. We will, therefore, consider the matter here.

It is a well-established principle that disciplinary proceedings are *sui generis* based upon the supreme court's inherent power to regulate the practice of law. (*In re Heller* (1988), 126 Ill. 2d 94, 107; *In re Harris* (1982), 93 Ill. 2d 285.) The primary purpose of a disciplinary proceeding is to protect the public from unqualified or unethical practitioners. (*In re Yamaguchi* (1987), 118 Ill. 2d 417, 424.) The supreme court alone is vested with the responsibility of admitting and disciplining attorneys. (*Harris*, 93 Ill. 2d at 291-92.) As such, disciplinary proceedings are neither civil nor criminal in nature and are governed solely by this court's rules and decisions. (*In re Samuels* (February 2, 1989), No. 65944, slip op. at 7-8; *Yamaguchi*, 118 Ill. 2d at 424.) The legislature is without

authority to regulate the admission of evidence in a disciplinary proceeding. To construe section 14—5 of the Eavesdropping Act (Ill. Rev. Stat. 1983, ch. 38, par. 14—5) to prohibit evidence in a disciplinary hearing would constitute a violation of the separation of powers (Ill. Const. 1970, art. II, §1). Consequently, section 14—5 does not bar the admission of evidence in disciplinary proceedings.

Respondent has failed to advance any reason why the transcripts of the monitored conversations should be deemed inadmissible in a disciplinary proceeding apart from the argument that the evidence is barred by statute. Having found the statute inapplicable, the evidence reliable, and the procedural safeguards afforded respondent in the Federal court proceeding reasonable, we see no reason to preclude the use of the evidence in respondent's disciplinary proceeding.

Respondent next argues that the transcript of his testimony in the Federal proceedings was improperly admitted before the Hearing Board because it was "the fruit of the illegally obtained transcripts." Respondent claims that he was forced to testify in the Federal proceedings in order to overcome the impact of the introduction of the transcripts of the monitored telephone conversations. Although the transcripts were obtained in violation of the Illinois eavesdropping laws, they were not obtained in violation of a similar Federal statute and, as we have held, their use is not precluded here. Because respondent's testimony in the Federal proceedings did not result from the introduction of tainted evidence, the transcript of his testimony will not be barred as derivative evidence here.

Respondent next maintains that the Hearing Board erred in denying his motion to dismiss based upon undue delay on behalf of the Administrator in initiating disciplinary proceedings. Calling attention to the 9½ years be-

tween the alleged misconduct and the decision rendered by the hearing panel, respondent claims that he was unduly prejudiced. The Administrator, however, notes that the majority of the delay was due to respondent's actions, and therefore, such delay cannot be charged against the Administrator.

There is no statute of limitations governing disciplinary proceedings. (*In re Owens* (1988), 125 Ill. 2d 390, 401; *In re Teichner* (1979), 75 Ill. 2d 88, 95; *In re Bossov* (1975), 60 Ill. 2d 439, 447.) In order to bar disciplinary proceedings due to delay, the respondent must demonstrate resultant prejudice in his ability to present a substantial defense. (*Teichner*, 75 Ill. 2d at 95.) The mere passage of time is insufficient.

The conduct which is the basis of these proceedings occurred on November 3 and 4, 1977. On February 23, 1978, respondent was indicted in the circuit court of Cook County on charges of bribery. On March 27, 1979, the circuit judge granted respondent's motion to suppress evidence. We affirmed the suppression of evidence and remanded the cause to the circuit court for trial. On September 24, 1982, the case was nol-prossed. That same day respondent was indicted in the Federal district court. On June 15, 1983, following a jury trial, respondent was acquitted. On July 29, 1983, the Administrator notified respondent that his conduct in connection with the bribery scheme was being investigated. The initiation of disciplinary proceedings had been withheld during the pendency of respondent's criminal proceedings.

Upon notification from the Administrator, respondent immediately pursued numerous procedural avenues in an attempt to suppress evidence before the Hearing Board. On May 1, 1984, respondent filed a motion for leave to file a petition for writ of *mandamus* with this court challenging the Administrator's use of testimony from the Federal proceedings. On May 22, 1984, respondent's mo-

tion was denied. On August 27, 1984, respondent filed suit in the circuit court of Cook County seeking to enjoin the Administrator from using certain evidence. Respondent's case was dismissed and respondent appealed. On January 7, 1986, the appellate court affirmed the dismissal of respondent's cause of action. On June 3, 1986, this court denied respondent's petition for leave to appeal in the matter.

On June 24, 1986, the Administrator filed a complaint against respondent. In response, on October 31, 1986, after procuring numerous requests for extension of time, respondent filed a motion to dismiss the complaint. Hearing was held on the matter and on November 16, 1986, respondent's motion to dismiss was denied. On December 19, 1986, hearing commenced. The record additionally contains numerous requests for continuance by respondent. Because of the delays occasioned by respondent's challenge to the admissibility of evidence and requests for continuance, respondent cannot now claim that the passage of time as a result of that conduct has unduly prejudiced him.

Respondent next claims that his acquittal in the Federal district court should constitute a bar to disciplinary proceedings based upon the same conduct. Although respondent recognizes that Illinois case law is contrary to this position, he seeks to distinguish those cases. Respondent maintains that because he was acquitted by a jury, "the conscience of the community" or "collective voice of the citizenry," and not a judge, disciplinary proceedings are inappropriate. We find this argument wholly without merit.

Illinois, along with the majority of other States, has adopted the position that an acquittal in a criminal proceeding against an attorney will not act as a bar to subsequent disciplinary proceedings based upon substantially the same conduct. (*In re Browning* (1961), 23 Ill. 2d 483,

490-91; see also *In re Rolley* (1988), 121 Ill. 2d 222, 233; *In re Howard* (1977), 69 Ill. 2d 343, 353; Annot., 76 A.L.R.3d 1028 (1977).) The rationale underlying this rule is the differing purposes of criminal as opposed to disciplinary proceedings. While the purpose of a criminal prosecution is to punish the wrongdoer, the purpose of a disciplinary proceeding is to determine whether an individual is a proper person to be permitted to practice law. (*Browning*, 23 Ill. 2d at 490-91; *Rolley*, 121 Ill. 2d at 232.) Thus, a disciplinary proceeding seeks to protect the public and monitor the legal profession. Additionally, the burden of proof in the two proceedings is different. In a criminal prosecution, charges must be established beyond a reasonable doubt; in a disciplinary proceeding charges need be proved by clear and convincing evidence. In this respect, evidence deemed insufficient to convict an attorney on criminal charges may be sufficient to show a deviation from required standards of professional conduct, warranting disciplinary action. (*Howard*, 69 Ill. 2d at 353.) Respondent's acquittal in the Federal district court has no bearing upon the professional misconduct alleged.

Respondent next maintains that the finding of misconduct is in error based upon his withdrawal from the bribery scheme. Respondent relies upon his acquittal in the Federal district court, as well as the transcripts of the monitored telephone conversations, in support of his defense of withdrawal.

Initially, we note that there is no evidence that respondent's acquittal in Federal court was based upon withdrawal. Although respondent presented evidence in support of his defense of withdrawal, the respondent also asserted that the respondent was not actively involved in any of the interstate telephone calls giving rise to the Federal crime. Since the jury's acquittal did not contain any specific factual findings, the respondent is

unable to demonstrate that the acquittal was based upon his defense of withdrawal.

More importantly, however, as we have already discussed, respondent's acquittal in a criminal case has little effect upon these proceedings. Disciplinary proceedings serve a different purpose and are governed by different rules. The respondent has been charged with different wrongs. Thus, even if respondent could convince us that he withdrew from the bribery scheme, this would not alleviate the professional errors he engaged in.

Finally, respondent challenges the sanctions recommended by the Hearing and Review Boards. Respondent maintains that his conduct in relation to the Soteras case, which occurred some 11 years ago, warrants censure or reprimand. Respondent additionally requests that if any period of suspension is imposed it should be considered to be already served based upon respondent's voluntary withdrawal from the practice of law during the pendency of criminal charges against him. The Administrator claims that respondent's conduct warrants disbarment.

The Hearing Board recommended that respondent be suspended from the practice of law for a period of one year. Although the Review Board concurred in the findings of the Hearing Board, the Review Board, with one member dissenting, recommended a three-year suspension. While the recommendations of the Hearing and Review Boards provide us with guidance, the final responsibility for imposing discipline is ours. (*In re Williams* (1986), 111 Ill. 2d 105, 115.) Thus, we are left to determine the appropriate sanction in light of respondent's misconduct.

The purpose of a disciplinary proceeding is to safeguard the public, maintain the integrity of the profession, and to protect the administration of justice from reproach. (*Williams*, 111 Ill. 2d at 115-16.) In determin-

ing the appropriate sanction, each case must be judged individually based upon the specific circumstances and conduct involved. (*In re Harris* (1982), 93 Ill. 2d 285, 296.) We also strive for a degree of consistency in imposing sanctions in cases that are similar.

Although not exactly analogous, we are guided by our prior dispositions in *In re Howard* (1977), 69 Ill. 2d 343, and *In re Kien* (1977), 69 Ill. 2d 355. Both of these cases involved the payment of money by an attorney to a police officer in order to influence his conduct.

In *Howard*, the respondent paid an arresting officer $50 on two occasions. The payments were allegedly made to induce the officer to testify truthfully at trial. According to respondent, the arresting officer threatened to testify contrary to his written report and "bury" respondent's client unless he was taken care of. Evidence presented at respondent's disciplinary proceeding, however, indicated that respondent acted with an improper motive. We concluded that respondent's conduct constituted "serious and indefensible breaches of regard for required professional conduct." (*Howard*, 69 Ill. 2d at 354.) In light of the extensive mitigating evidence presented by respondent, however, we ordered that respondent be suspended for a period of two years.

In *Kien*, the respondent paid $50 to a police officer. Before the hearing panel, Kien testified that he paid the arresting officer to testify truthfully at a hearing on a motion to suppress. The officer confronted Kien before the hearing informing him that he had "to pay for the truth." After recognizing the severity of respondent's misconduct, we noted that respondent's ethical aberration was less flagrant than that exhibited in *Howard*. Kien presented substantial character evidence and indicated that this single incident was the only aberration on his professional record. As a result, we ordered respondent suspended for a period of 18 months.

In addition to the guidance provided by *Howard* and *Kien,* we must examine the mitigating evidence presented in this case. We have previously noted that mitigating factors include "the length of time in practice, previous misconduct, whether and when restitution is made if it is owing, community service, *pro bono* legal work, and the testimony of character witnesses and professional colleagues." *In re Lenz* (1985), 108 Ill. 2d 445, 453-54.

Respondent was licensed to practice law in 1970. The misconduct involved in this case, which occurred some 11 years ago, is the only mar on respondent's professional record. Although respondent was involved in the scheme to bribe Furay, he did not actually make the payments. Respondent only established the groundwork for the realization of the scheme by Gervasi. The respondent presented extensive evidence of community involvement and *pro bono* work. Numerous respected professionals attested to respondent's good character. Respondent has committed an egregious act by being involved in a scheme to bribe a police officer. As noted by the Hearing Board, such conduct, when viewed in isolation, would be sufficient to warrant disbarment. However, in light of the extensive mitigating circumstances involved, it is our determination that respondent should be suspended for a period of two years. The time during which respondent voluntarily removed himself from the practice of law is not to be credited against the sanction.

*Respondent suspended.*

WARD, STAMOS and CALVO, JJ., took no part in the consideration or decision of this case.