**In re Paul M. STORMENT, Jr., Respondent.**

**No. 75335.**

Supreme Court of Missouri, En Banc.

March 22, 1994.

As Modified on Denial of Rehearing April 26, 1994.

---

John E. Howe, Sam S. Phillips, Jefferson City, for informant.

Arthur G. Muegler, Jr., St. Louis, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

BENTON, Judge.

On September 29, 1992, Paul Storment, a member of both the Illinois and Missouri Bars, was suspended by the Illinois Supreme Court for two years. The issue now is whether he should be disciplined in Missouri. *Rule 5.*

Storment represented Debra Granger in an Illinois divorce case; the custody of Granger's daughter was at issue. Testifying for Granger's spouse, John Moody stated that in October 1986, he and Granger had sexual intercourse in a motel, the Camelot Inn, while her daughter was present.

After Moody's surprise testimony, Storment requested a recess. The courtroom emptied, except for Storment and Granger. However, the court reporter's tape recorder—inadvertently left on—recorded the following conversation:

STORMENT: What about this business about the booze though? What about the business about the Camelot Inn? Did that happen?

GRANGER: Yeah, it happened.

STORMENT: God-damn. What were you thinking about?

GRANGER: She was only three months— I mean 18 months. I couldn't leave him. I don't know. I don't know.

STORMENT: You better deny this. Eighteen months old, Jesus.

GRANGER: Well, she wasn't even 18 months in '86. She was a little bitty baby. She was still in diapers. She was born in '85, in '84, December of '84. In '85, she was about a year, but I was not seeing him in '86 because right after the court date, right after my court date, me and Darnell still were talking, and I did see him then.

STORMENT: So, that didn't happen in October of '86?

GRANGER: No, it wouldn't have been October.

STORMENT: You better deny this, buddy. You better deny it. What about the liquor situation? You told me you didn't even drink.

\*      \*      \*      \*      \*      \*

[Further discussion of Granger's drinking and relationship with Moody]

\*      \*      \*      \*      \*      \*

STORMENT: Yeah, but I think the thing that hurts you is taking the kid in the room and screwing with the kid in the room. He said that you two had sex in the bed next to your kid, your little kid that was in the other bed. You're going to have to do something with it.

GRANGER: What can I do with it that won't make it seem like I'm lying?

STORMENT: I don't know. That's up to you. It could be your word against his. It's up to you.

GRANGER: Are you saying if I deny it then—

STORMENT: If you said it didn't happen, it didn't happen.

GRANGER: I remember it happening in '86. It seemed to me she was in diapers. She was little. I've left him so many different times, except the first time I filed was in '85, right?

STORMENT: Yeah, but think of your judgment like that, screwing some guy in a motel room with your daughter in the other bed next to you. She recognized her mother, didn't she?

GRANGER: Well, she was little bitty. We're talking about little. We're talking about pampers.

STORMENT: Well, what are you going to say about that? Are you going to deny that or not?

GRANGER: I don't know.

STORMENT: Hum?

GRANGER: I don't know.

STORMENT: Well, it's up to you. It's up to you.

Well, you're telling the truth when you say it didn't happen in '86. Okay.

GRANGER: I don't remember it happening in '86, no.

STORMENT: This guy crucifies you.

GRANGER: I know.

After the recess, Storment called Granger as a witness, who testified in response to his questions:

Q: Okay. Now, in 1986, why—what would possess him to tell that you went to a motel with him, with your daughter?

A: I don't know.

Q: Did you think he was your friend?

A: Yes.

Q: What was the situation with him when you met Darnell when you were separated? Were you going out with Moody?

A: No, I wasn't.

Q: You dumped him for Darnell?

A: No, I wasn't dating anyone.

Q: You weren't dating anyone?

A: No.

Q: Do you ever—under oath now, do you ever remember going to a motel with your daughter with Mr. Moody?

A: No.

Q: That's a lie, isn't it?

A: Yes.

Q: What would possess him to tell that?

A: I don't know....

On cross-examination, Granger testified:

Q: And, you were saying that this relationship just ended at your marriage?

A: I did.

Q: Okay. And, everything that he is saying after that about any sort of relationship is totally fabricated?

A: I wouldn't say fabricated, no. We did talk.

Q: You did go out?

A: After my separation from Mr. Granger when I filed for my divorce.

Q: But, you did go out?

A: We went riding. We went shopping.

Q: This was all platonic?

A: Yes.

Q: So everything he said today was just fabricated—

MR. STORMENT: Objection, some of it wasn't fabricated. The motel incident she said was fabricated.

Q: (By [opposing counsel]) Everything relating to a sexual nature after 1984 was fabricated, correct?

A: Yes.

The "recess consultation" between Granger and Storment was reported to the Illinois Attorney Registration and Disciplinary Commission. A hearing board concluded that Storment violated several Illinois disciplinary rules. Storment consented to the hearing board's report and recommendation, which the Illinois Supreme Court approved. On September 29, 1992, Illinois suspended Storment from the practice of law for two years. On October 15, 1992, the chief disciplinary counsel of Missouri commenced this disciplinary proceeding.

The State of Illinois separately filed criminal charges against Storment for perjury and subornation of perjury. Following a nonjury trial, Storment was acquitted of all charges.

### I.

Storment contends that the Illinois acquittal collaterally estops this Court from considering the recess consultation because the Illinois trial judge held that it did not prove the charges. However, a criminal acquittal does not bar subsequent disciplinary action. See *Younge v. State Board of Registration for the Healing Arts*, 451 S.W.2d 346, 350 (Mo.1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 910, 25 L.Ed.2d 102 (1970); *In re Sympson*, 322 S.W.2d 808, 813 (Mo. banc 1959).

The chief disciplinary counsel seeks to discipline Storment under Rule 5.19:

Upon the filing of an information by the chief disciplinary counsel that a lawyer admitted to practice in Missouri has been adjudged guilty of professional misconduct

in another jurisdiction, this Court shall cause to be served on the lawyer an order to show cause why said adjudication should not be conclusive of said misconduct for the purpose of discipline by this Court. The chief disciplinary counsel urges this Court to give full faith and credit to the Illinois disciplinary order, and then discipline Storment under Rule 5.19.

State courts must accord full faith and credit to the valid judgments of other states. U.S. Const. Art. IV, § 1; *Shearer v. Parker*, 364 Mo. 723, 267 S.W.2d 18, 25 (1954). Giving the Illinois order full faith and credit means that Storment cannot attack the order except for: 1) lack of jurisdiction over the subject matter; 2) failure to give due notice to him; or 3) fraud in the concoction or procurement of the judgment. *In re Veach*, 365 Mo. 776, 287 S.W.2d 753, 759 (banc 1956). At the hearing before the Missouri special master, Storment admitted, under oath, that these grounds do not exist.

The Illinois disciplinary order is sufficient basis for this Court to discipline Storment under Rule 5.19. However, according the order full faith and credit does not *require* discipline in Missouri. *In re Weiner*, 530 S.W.2d 222, 224 (Mo. banc 1975). Rule 5.19 contemplates that this Court may choose not to discipline a lawyer disciplined by another state. *Id.* For example, the attorney's conduct may not be a ground for discipline in Missouri. *In re Veach*, 287 S.W.2d at 759. This Court makes its own independent judgment as to the fitness of the members of its bar. *Id.* at 755; *Weiner*, 530 S.W.2d at 224.

## II.

The initial information referenced only the Illinois Suspension Order and the Illinois Code of Professional Responsibility. *See Rule 5.19.* However, the chief disciplinary counsel, before both the Master and this Court, clearly identified the Missouri Rules that Storment allegedly violated: Rules 3.3(a)(2), 3.3(a)(4), 3.3(b), 3.4(b), 3.4(e), 8.4(a), 8.4(c), and 8.4(d) of the Missouri Rules of Professional Conduct.

Storment claims that he instructed Granger to deny only the date of the Moody incident, not its occurrence. The transcript clearly refutes this claim. Storment asks Granger whether the Camelot Inn incident occurred. Granger immediately answers, "Yeah, it happened." Before either mentions the date of October 1986, Storment tells Granger, "You better deny this." Storment now contends because Granger had reconciled with her husband in October 1986, she would have told him of any affair with Moody. This contention is simply not credible.

Rule 3.4(b) prohibits a lawyer from counseling or assisting a witness to testify falsely. By counseling and assisting Granger to deny the Camelot Inn incident, Storment violated Rule 3.4(b).

Storment's unprofessional conduct continued in open court. On direct examination, Storment asks Granger: "Do you ever—under oath now, do you ever remember going to a motel with your daughter with Mr. Moody?" Granger answers "No." At the hearing before the special master, Granger explained that she thought Storment's question was limited to October 1986. However, Storment did not limit his question to October 1986; instead, he simply asked Granger whether she ever remembered going to a motel with her daughter and Moody. The question and the answer were designed to prove that Granger had never been to a motel with her daughter and Moody. From his recess consultation, Storment knew this was not true.

By Rule 3.3(a)(2), a lawyer shall not knowingly fail to disclose a material fact necessary to avoid assisting a fraudulent act by the client. Rule 3.3(a)(4) prohibits a lawyer from offering evidence that the lawyer knows to be false. Storment's conduct violated both rules.

Rule 8.4(c) makes it professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Equally, by Rule 8.4(d), a lawyer shall not engage in conduct prejudicial to the administration of justice. Storment also violated both these rules.

Storment has failed to show cause why the Illinois disciplinary order should not be con-

clusive of misconduct for the purpose of discipline by this Court. Storment is therefore subject to discipline. *Rule 5.19.*

### III.

Rule 5.21(c) authorizes four types of discipline: reprimand, suspension for an indefinite period of time, suspension for a fixed period of time, or disbarment. Storment requests either a public reprimand or a suspension until the date the Illinois suspension ends.

In cases of false statements, fraud, or misrepresentation, this Court issues reprimands only if the lawyer is merely negligent in determining whether statements or documents are false, or fails to take remedial action when material information is withheld, thereby causing injury or potential injury to a party, or causing an adverse or potentially adverse effect on the legal proceeding. *ABA Standards for Imposing Lawyer Sanctions,* Rule 6.13 (1986). Because Storment was more than negligent, a public reprimand is not appropriate.

Suspension is also not appropriate. Suspension is appropriate when the lawyer knows that false statements are being submitted to the court, or that material information is improperly being withheld, and takes no remedial action, thus causing injury or potential injury to a party, or an adverse or potentially adverse effect on the legal proceeding. *ABA Standards,* Rule 6.12 (1986); *In re Ver Dught,* 825 S.W.2d 847, 850–51 (Mo. banc 1992). Storment's active role transcends failure to remedy.

Disbarment is the appropriate sanction. Disbarment is appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, thus causing serious or potentially serious injury to a party, or a significant or potentially significant adverse effect on the legal proceeding. *ABA Standards,* Rule 6.11 (1986). The evidence shows that Storment, with the intent to deceive, participated in presenting false evidence. *See id.* (Commentary). Disbarment is appropriate.

Storment cannot apply for readmission until at least five years after the effective date of his disbarment. *ABA Standards,* Rule 2.2 (1986); *Rule 5.26(a)(3).*

### IV.

This Court orders Paul M. Storment, Jr., disbarred. Costs taxed to Respondent.

All concur.