No. 95-1799

```
                          *
                          *
In re:  ATTORNEY          *   Appeal from the United States
DISCIPLINE MATTER         *   District Court for the
                          *   Eastern District of Missouri.
                          *
                          *
```

Submitted:  September 12, 1996

Filed:  October 24, 1996

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, and ROSS, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

On February 9, 1995, the United States District Court for the Eastern District of Missouri ordered attorney P.S. ("appellant")[1] to surrender his license and relinquish his enrollment in the district court following a similar disbarment by the Supreme Court of Missouri. On appeal, appellant argues that the district court erred in imposing discipline identical to that of the Supreme Court of Missouri because the Missouri court made factual findings which were precluded under the doctrine of collateral estoppel. Appellant also argues that the district court abused its discretion when it reciprocally disbarred him because: (1) the Missouri disbarment order was not supported by adequate proof; (2) the established misconduct warranted substantially different discipline; and (3) the imposition of identical discipline resulted in grave injustice. For the reasons set forth below, we affirm the district court's judgment.

---

[1]Because the case is under seal, we refer to all parties by generic names or letters of the alphabet.

## I. BACKGROUND

Appellant was a member of the bars of Illinois and Missouri. Appellant represented a woman ("D.G.") in an Illinois divorce case in which the custody of D.G.'s daughter was at issue. J.M., a witness for D.G.'s spouse, testified that in October 1986, he and D.G. engaged in sexual intercourse in a motel room in the presence of D.G.'s young daughter. Surprised by the damaging testimony, appellant requested a recess to discuss the matter with his client. Apparently unbeknownst to anyone, the court reporter inadvertently left her tape recorder running. Appellant and D.G. remained in the otherwise empty courtroom to discuss J.M.'s testimony. During the recess, the following conversation between appellant and D.G. was recorded:

> APPELLANT: What about this business about the booze though? What about the business about the [motel]? Did that happen?
>
> D.G.: Yeah, it happened.
>
> APPELLANT: God-damn. What were you thinking about?
>
> D.G: She was only three months -- I mean 18 months. I couldn't leave him. I don't know. I don't know.
>
> APPELLANT: You better deny this. Eighteen months old, Jesus. (emphasis added)
>
> D.G.: Well, she wasn't even 18 months in '86. She was a little bitty baby. She was still in diapers. She was born in '85, in '84, December of '84. In '85, she was about a year, but I was not seeing him in '86 because right after the court date, right after my court date, me and [D] still were talking, and I did see him then.
>
> APPELLANT: So, that didn't happen in October of '86?
>
> D.G.: No, it wouldn't have been October.
>
> APPELLANT: You better deny this, buddy. You better deny it. What about the liquor situation? You told me you didn't even drink. (emphasis added)

2

                    *             *            *

     APPELLANT:  Yeah, but I think the thing that hurts you is taking the kid in the room and screwing with the kid in the room.  He said that you two had sex in the bed next to your kid, your little kid that was in the other bed.  <u>You're going to have to do something with it.</u>  (emphasis added)

     D.G.:  <u>What can I do with it that won't make it seem like I'm lying</u>?  (emphasis added)

     APPELLANT:  I don't know.  That's up to you.  <u>It could be your word against his.  It's up to you.</u>  (emphasis added)

     D.G.:   <u>Are you saying if I deny it then --</u>  (emphasis added)

     APPELLANT:   <u>If you said it didn't happen, it didn't happen.</u>  (emphasis added)

     D.G.:  <u>I remember it happening in '86.</u>  It seemed to me she was in diapers.  She was little.  I've left him so many different times, except the first time I filed was in '85, right? (emphasis added)

     APPELLANT:  Yeah, but think of your judgment like that, screwing some guy in a motel room with your daughter in the other bed next to you.  She recognized her mother, didn't she?

     D.G.:  Well, she was little bitty.  We're talking about little.  We're talking about pampers.

     APPELLANT:  Well, what are you going to say about that? Are you going to deny that or not?

     D.G.:  I don't know.

     APPELLANT:  Hum?

     D.G.:  I don't know.

     APPELLANT:  Well, it's up to you.  It's up to you.  Well, you're telling the truth when you say it didn't happen in '86. Okay.

     D.G.:  I don't remember it happening in '86, no.

     APPELLANT:  This guy crucifies you.

                               3

D.G.:  I know.


After the recess, D.G. testified to the following on direct examination:

APPELLANT:  Okay.  Now, in 1986, why -- what would possess him to tell that you went to a motel with him, with your daughter?

D.G.:  I don't know.

APPELLANT:  Did you think he was your friend?

D.G.:  Yes.

APPELLANT:  What was the situation with him when you met [D] when you were separated?  Were you going out with [J.M.]?

D.G.:  No, I wasn't.

APPELLANT  You dumped him for [D]?

D.G.:  No, I wasn't dating anyone.

APPELLANT:  You weren't dating anyone?

D.G.:  No.

APPELLANT:  Do you ever -- <u>under oath now, do you ever remember going to a motel with your daughter with [J.M.]</u>? (emphasis added)

D.G.:  <u>No.</u>  (emphasis added)

APPELLANT:  That's a lie, isn't it?

D.G.:  Yes.

APPELLANT:  What would possess him to tell that?

D.G.:  I don't know . . . .


The following exchange occurred on cross-examination of D.G.:

OPPOSING COUNSEL:  And, you were saying that this relationship just ended at your marriage?


4

D.G.:  I did.

OPPOSING COUNSEL:  Okay.  And, everything that he is saying after that about any sort of relationship is totally fabricated?

D.G.:  I wouldn't say fabricated, no.  We did talk.

OPPOSING COUNSEL:  You did go out?

D.G.:  After my separation . . . when I filed for my divorce.

OPPOSING COUNSEL:  But, you did go out?

D.G.:  We went riding.  We went shopping.

OPPOSING COUNSEL:  This was all platonic?

D.G.:  Yes.

OPPOSING COUNSEL:  So everything he said today was just fabricated --

APPELLANT:  Objection, some of it wasn't fabricated.  <u>The motel incident she said was fabricated.</u>  (emphasis added)

OPPOSING COUNSEL:  Everything relating to a sexual nature after 1984 was fabricated, correct?

D.G.:  Yes.


The recorded colloquy between appellant and D.G. and the testimony that followed formed the basis for criminal and disciplinary proceedings against appellant.  The State of Illinois filed charges against appellant for perjury and subornation of perjury.  Following a non-jury trial, he was acquitted.  A hearing panel for the Disciplinary Commission of the Illinois Bar concluded that appellant violated several disciplinary rules and recommended that the Supreme Court of Illinois suspend him from practice for two years.  Appellant consented to the panel's report and recommendation, and the Supreme Court of Illinois suspended appellant for a two-year period beginning September 29, 1992.  On October 15, 1992, the chief disciplinary counsel of Missouri

commenced a disciplinary proceeding against appellant under Missouri Supreme Court Rule 5.19, which allows the Court to discipline attorneys based on disciplinary adjudications of other jurisdictions, provided the attorney is given an opportunity to show cause why the Supreme Court of Missouri should not impose similar discipline. In a decision entered March 22, 1994, the Supreme Court of Missouri disbarred appellant.[2]

On June 20, 1994, the United States District Court for the Eastern District of Missouri, pursuant to Local Rule 2(I), issued an order directing appellant to show cause in writing within thirty days why the district court should not impose discipline identical to that imposed by the Supreme Court of Missouri. On July 11, 1994, appellant filed a reply entitled "Show Cause" Application. The "Show Cause" Application requested that the district court suspend appellant for two years in accordance with the decision of the Supreme Court of Illinois, rather than disbar him in accordance with the Missouri discipline. The district court denied this request and entered an order disbarring appellant from the United States District Court for the Eastern District of Missouri.[3]

## II. DISCUSSION

The first issue on appeal is whether the district court erred when it reciprocally imposed discipline based on the Supreme Court of Missouri's disbarment order. Appellant contends that the Supreme Court of Missouri was collaterally estopped from reviewing the nature of appellant's intent when he asked the following question on direct examination:

APPELLANT: Do you ever -- under oath now, do you ever remember going to a motel with your daughter with [J.M.]?

---

[2] In re Storment, 873 S.W.2d 227, 231 (Mo. 1994).

[3] In re Storment, No. 4:94MC00143 (E.D. Mo. Feb. 9, 1995).

6

(emphasis added)

No. (emphasis added)

ellant, Judge Riley stated
that "[t]he question
whether something happened or did not happen." State v. Storment
CF-1001, slip op. at 4 (St. Clair County Circuit Court June 24, 1991)
However,                                                              d
answer                              [D.G.] had never been to a motel with
her                                 his recess consultation, [appellant] knew
this was not true."  _____, 873 S.W.2d at 230.  According to appellant,
                                                      question was not intended
to                                                                   e
factual                                                              d
discipline based on the Supreme Court of Missour
with appellant's contention.

    The Unite
shall be given in each State to the . . . judicial Proceedings of ever
other State."        C   . art. IV, § 1.  Thus, the Constitution required
the Supreme Court of Missouri to give the Illinois "judgment [of acquittal]
   least the res judicata      which the judgment would be accorded in
[Illinois]." Durfee v. Duke                                          d
under Illinois law th
attorney                                                             d
upon                              In re Ettinger, 538 N.E.2d 1152
1160 (Ill                 In re Browning, 179 N.E.2d 14, 17-18 (Ill
1962)).  In _____, the Supreme Court of Illinois distinguished criminal
proceedings from those which are

---

[4]Similarly, an acquittal of criminal charges does not ba
disciplinary action based on underlying conduct in Missouri.  In re
Sympson

disciplinary in nature:

> The rationale underlying this rule is the differing purposes of criminal as opposed to disciplinary proceedings. While the purpose of a criminal prosecution is to punish the wrongdoer, the purpose of a disciplinary proceeding is to determine whether an individual is a proper person to be permitted to practice law. . . . Additionally, the burden of proof in the two proceedings is different. In a criminal prosecution, charges must be established beyond a reasonable doubt; in a disciplinary proceeding charges need be proved by clear and convincing evidence. In this respect, evidence deemed insufficient to convict an attorney on criminal charges may be sufficient to show a deviation from required standards of professional conduct, warranting disciplinary action.

Ettinger, 538 N.E.2d at 1160 (citations omitted). In appellant's criminal case, the prosecution was required to prove beyond a reasonable doubt that appellant's conduct amounted to subornation of perjury. However, in appellant's Missouri disciplinary proceeding his violation of the Missouri Rules of Professional Conduct only had to be established by a preponderance of the evidence. In re Littleton, 719 S.W.2d 772, 775 (Mo. 1986). Because Missouri courts need give to the judgment only the res judicata effect given by other Illinois courts, the Supreme Court of Missouri was not prevented from considering the conduct underlying the Illinois acquittal. Durfee, 375 U.S. at 109. Just as the differing burdens of proof would have enabled the Illinois disciplinary tribunal to examine the conduct underlying appellant's criminal proceedings, Ettinger, 538 N.E.2d at 1160, the differing burdens of proof allowed the Supreme Court of Missouri to make an independent consideration of whether appellant's conduct violated the Missouri Rules of Professional Conduct. Id. Therefore, the Supreme Court of Missouri was not collaterally estopped from considering what appellant's intent was when he asked D.G. if she remembered going to a motel with J.M. Consequently, the district court did not commit error when it imposed discipline based on the

Supreme Court of Missouri's disbarment order.

The      nd issue on appeal is whether the district court committed
      when it recognized the Supreme Court of Missouri's disciplinar
action by imposing reciprocal discipline.  When reviewing a distric
court's disciplinary order, we will reverse
of disc                          In re Olkon, 795 F.2d 1379, 1381 (8th Cir
1986); _____, 577 F.2d 30, 32 (8th Cir. 1978). The district
      disbarred appellant under Local Rule 2(I)(4), which at the tim
provided:

        (4)                                                    s
    Cou    shall  impose  the  identical  discipline  unless  the
       pondent-attorney demonstrates, or this Court finds, tha
    upon  the                                                  n
    another jurisdiction is predicated it clearly appears:
                                        so lacking in notice or
        opportunity to be heard as to constitut
        due process; or
          (b)                                                  f
        establishing
        conviction that this court could not, consistent with its
                    as final the conclusion on that subject; or
          (c)  that the imposition of the same discipline by

          (d)  that the misconduct established is deemed b
    this Court to warrant substantially different discipline.


Missouri                                                         t
contends that the district court's failure to in
and (d) of Rule 2(I)(4) amounted to an abuse of discretion.  We disagree.

          h] a lawyer is admitted into a federal court by way of
state court, he is not automatically sent out of the federal court by the
      route." _____, 354 U.S. 278, 281 (1957).  Each

discipline members of its bar.  Id.  ("[T]he federal judiciary . . .
have autonomous control over the conduct of their officers . . . .");
Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir.) ("The existence in the
federal courts of an inherent [disciplinary] power necessary to the
exercise of all others is firmly established.") (citation and quotation
omitted), cert. denied, 510 U.S. 828 (1993); In re Rhodes, 370 F.2d 411,
413 (8th Cir.) ("Any court which has the power to admit attorneys to
practice has the authority to disbar or discipline attorneys for
unprofessional conduct.") (citations omitted), cert. denied, 386 U.S. 999
(1967).  While state court disciplinary action is "'not conclusively
binding on the federal courts,'" federal courts must give a high level of
respect to state court disbarment proceedings.  In re Randall, 640 F.2d
898, 901 (8th Cir.) (quoting Theard, 354 U.S. at 282), cert. denied, 454
U.S. 880 (1981).  Thus, a district court, when determining whether to
discipline a member of its bar consistent with a state disciplinary
adjudication, may impose reciprocal discipline unless, after an independent
consideration of the record, the court finds (1) a deprivation of due
process; (2) a lack of adequate proof establishing misconduct; or (3) that
the imposition of reciprocal discipline would result in grave injustice.
Selling v. Radford, 243 U.S. 46, 51 (1917); Randall, 640 F.2d at 901.
Local Rule 2(I)(4)(d) additionally requires the district court to break
from the state court's order when the misconduct "warrant[s] substantially
different discipline."

## A.  Adequate Proof to Establish Misconduct

Appellant contends that the recorded colloquy between him and his
client merely demonstrated "the sort of questioning of a client and venting
of emotions" one would normally exhibit when confronted with surprising and
damaging testimony.  To the contrary, it is not normal or acceptable for
an attorney to counsel his client to deny damaging testimony without regard
for its truth or falsity.  Appellant's first question of D.G. was whether
the incident at the

10

motel occurred. D.G.'s immediate response was, "Yeah, it happened." After brief attempt to defend her actions to her attorney, appellan responded, "You better deny this." When appellant counseled his client to the damaging testimony, he had no reason to believe the incident at ed by the Supreme Court of Missouri, appellant c of Missouri Rule of Professional Conduct 3.4(b).  _____, 873 S.W.2d at 230.

, during direct testimony of D.G., the following questionin transpired:

> APPELLANT   Do you ever -- <u>under oath now</u>      <u>ever</u>
>     ember going to a motel with your daughter with [J.M.]
>     (emphasis added)
>
>     D.G.: <u>   </u>   (emphasis added)

In the recorded conve
immediately prior to this line of
implied                                <u>ever</u> taken place.  There was
substantial amount of confusion about when
a denial of its occurrence.
that "[t]he question and the answer were designed to prove that [D.G.] had been to a motel with her daughter and [J.M.]  From his reces consultation, [appellant] knew this was not true." <u>   </u> Accordingly, the Supreme                                <u>Id.</u> at 231.  There wa adequate if not overwhelming proof of appellant's misconduct. Therefore, district court did not abuse its discretion in refusing to invoke loca rule 2(I)(4)(b).

## B.  Misconduct Warranting Substantially Different Discipline

11

nt discipline than that imposed by the Supreme Court of                           First, appellant argues that the factual findings of the court were precluded by the doctrine of collateral estoppel were insubstantial.  We discussed and rejected this reasoning above.


cond, appellant asserts that his disbarment is inconsistent wit the discipline imposed in _____, 825 S.W.2d 847 (Mo. 1992),                    rney misconduct case.  The Supreme Court of Missouri no doubt reviewed both of these cases carefully and found that one warranted a six-month suspension, _Id._ another attorney's conduct warranted disbarment.  _____, 873 S.W.2d at 231.                                a state's highest court considers many      rs and "must be given considerable leeway in meting out the tions imposed."  _____, 640 F.2d at 904.  In appellant's case, was within the appropriate range of sanctions, and "[w]e are no in a position, nor authorized, to second-guess the highest state court on _Id._


lly, appellant urges that the district court should hav disciplined appellant based on Illinois' two-year suspension, rather than disbarment.  First, we reiterate that each court which admits to its bar has the power to discipline those members as it sees _Theard_, 354 U.S          _Harlan_, 982 F.2d at 1259; _____, 370 F.2d at      The district court was not required to follow the disciplinary ois or Missouri.  However, based on the notification of disbarment by the an order                                                              e ide      discipline. It was well within the district court's inherent to discipline appellant based on Missouri's disbarment order. , the district court in the present case did not abuse it discretion in entering judgment consistent with the Missouri disbarment as


12

## C. Grave Injustice

Appellant argues that the district court abused its discretion when it failed to recognize that a grave injustice would result from its failure to depart from Missouri's disbarment order.  We disagree.  Appellant did not conduct himself in accordance with the rules of the profession and was disbarred from the Supreme Court of Missouri and the United States District Court for the Eastern District of Missouri as a result.  The district court did not abuse its discretion in failing to find grave injustice.

## III.  CONCLUSION

The doctrine of collateral estoppel did not preclude the Supreme Court of Missouri from considering the conduct underlying appellant's criminal proceeding, and the district court did not abuse its discretion when it imposed discipline identical to that imposed by the Supreme Court of Missouri.  Accordingly, we affirm the district court's disbarment order. At this point, we suggest that appellant's best course of action would be to petition the Supreme Court of Missouri for readmission to the Missouri Bar based on his readmission to the Illinois Bar.  What the Missouri Supreme Court would do in this scenario is entirely within its discretion.

AFFIRMED.

A true copy.

   Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

13